**HUTCHINSON TELEPHONE COMPANY, Plaintiff,**

v.

**FRONTEER DIRECTORY COMPANY OF MINNESOTA, INC., Defendant.**

**Civ. No. 5-83-96.**

United States District Court, D. Minnesota.

June 15, 1984.

Alan G. Carlson, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., for plaintiff.

Elliot S. Kaplan and George A. Leone, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

### INTRODUCTION

This is a copyright infringement suit brought by Hutchinson Telephone Company (Hutchinson) in which Hutchinson claims that Fronteer Directory Company (Fronteer) violated the copyright laws by copying the white pages section of Hutchinson's telephone book. Hutchinson provides telephone service within the Hutchinson, Minnesota, area, and is required by law to publish a listing of the names and numbers of its telephone customers. Fronteer has published a telephone directory which includes, but is not limited to, the Hutchinson area. Both the Fronteer and the Hutchinson telephone directories contain white pages and yellow page advertising.

Upon commencing trial of the matter on April 16, the court concluded that the trial should be split into two separate phases. First, the court would decide the issue of whether Hutchinson's white pages are the proper subject matter of a copyright. During the second phase, the court would determine whether Hutchinson's copyright had been infringed, if indeed it is concluded that Hutchinson holds a valid copyright.

After hearing evidence during the first phase of the trial, the court took the copyright issue under advisement. Because allowing a copyright on Hutchinson's white pages would not serve the purposes of the Copyright Act, this court concludes that Hutchinson does not hold a valid copyright in its white pages.

### THE MERITS

An analysis of the scope of protection provided by the Copyright Act begins with a study of the Act itself. Section 102 of the Act states that copyright protection subsists in "original works of authorship." 17 U.S.C. § 102 (1976). Although the term "original" is not defined in the Copyright Act, it is clear that an author creates something "original" when he creates a product through his own work. That product, however, does not have to be novel. Thus, if an author writes a book and that book happens to be very similar to a preexisting one, the author has, nonetheless, created an original work as that term is used in the Act. See M. Nimmer, Nimmer on Copyright § 2.01[A], at 2–8 (1980).

The term "works of authorship," on the other hand, is defined in the Act and includes compilations. 17 U.S.C. § 103(a) (1976). A compilation is:

a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

The Act protects compilations only to the extent that the author's form of expression is original or the product of his own intellect and diligence. See 17 U.S.C. § 103(b) (1976). In the case of compilations of facts and public data, such facts are preexisting material, and protection extends only to the expression of those facts—how they are laid out or arranged—but not to the facts themselves. See Northwestern Bell Tel. Co. v. Bedco of Minn., Inc., 501 F.Supp. 299, 302 (8th Cir. 1980).

In general, white page listings meet the above terms of the Act, and, therefore, are protectable by copyright. Courts have found that telephone directories may constitute that kind of "compilation" which deserves protection under the Act. See Leon v. Pacific Tel. & Telegraph Co., 91 F.2d 484 (9th Cir.1937); Southwestern Bell Tel. Co. v. Nationwide Ind. Dir. Serv. Inc., 371 F.Supp. 900 (W.D.Ark.1974). Under the facts of this case, however, such a conclusion is not warranted.

The Copyright Act was enacted "to encourage works of intellect" and "to secure the general benefits which inure to the public through the author's labors." See Universal City Studios v. Sony Corp. of America, 659 F.2d 963, 963 (9th Cir.1981) and Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156, 95 S.Ct. 2040,

2043, 45 L.Ed.2d 84 (1975). These purposes are well-established, but would not be served by extending a copyright to Hutchinson in this instance.

■ Plaintiff Hutchinson is granted a monopoly to operate a telephone company by the State of Minnesota Public Utilities Commission. By its charter, Hutchinson is required to publish a telephone book. Because Hutchinson is required by law to publish its white pages, the purposes of the Copyright Act—to encourage works of intellect and to secure the general benefits which inure to the public through the author's labors—could not be served by granting Hutchinson copyright protection.

To allow a copyright in these circumstances would only permit Hutchinson to unnecessarily extend the benefit of its telephone monopoly to the publication of its white pages and, consequently, to yellow page advertising. It should be pointed out that Hutchinson in fact charges its customers for the service of having their names and numbers published in the white pages. In addition, it has been repeated at different times throughout these proceedings that Hutchinson would require Fronteer to pay $10.00 for the use of each name and number from Hutchinson's white pages. Hutchinson has apparently computed this figure based upon the profit which it gains from its yellow page advertising.

There is no doubt that Fronteer and Hutchinson are competitors for yellow page advertising in the Hutchinson area. The question before the court, however, is limited to whether Hutchinson is legally entitled to copyright protection in its white pages, not its yellow page advertising. Given the particular facts of this case, Hutchinson's white pages cannot be viewed as the kind of compilation that is protected under the Copyright Act.

In his treatise on copyright, Professor Nimmer confirms this court's recognition of the purposes of the Act:

> [T]he authorization to grant to individual authors the limited monopoly of copyright is predicated upon the dual premises that the public benefits from the creative activities of authors, and that the copyright monopoly is *a necessary condition* to the full realization of such creative activities. *Implicit in this rational is the assumption that in the absence of such public benefit the grant of a copyright monopoly to individuals would be unjustified.*

M. Nimmer, *Nimmer on Copyright* § 1.03[A], at 1–30.1 (1982) (footnote omitted) (emphasis added). *See Mazer v. Stein,* 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1955).

Although both the *Leon* and *Southwestern Bell* cases concern the issue of the copyrightability of white pages, neither case discusses the circumstance in which a phone company is required by law to publish its directory. In this case, Hutchinson's publication of its white pages is a requisite condition to the operation of its state-guaranteed monopoly.

The case of *Northwestern Bell Tel. Co. v. Bedco of Minn., Inc.,* 501 F.Supp. 299 (D.Minn.1980), is equally distinguishable from the facts presently before the court. The defendant in *Bedco* solicited advertising for its new yellow pages directory by copying the ads in plaintiff's directory and sending them to prospective customers, stating that the ad would appear in defendant's new directory with the approval of the customer. The court found that the copying of plaintiff's yellow page advertising was an infringement of plaintiff's copyright. For purposes of this case, it is important to note that defendant did not challenge the validity of plaintiff's copyright. Moreover, the plaintiff in *Bedco* was not required by law to publish its yellow page advertising.

The issues of this case ultimately turn upon the meaning of the terms "compilation", "original" and "work of authorship" found within the Act. In interpreting these terms, this court is guided by the purposes of the Act, and must employ these purposes in determining whether a particular work is copyrightable. In this case, because Hutchinson is required by

law to publish its white pages, allowing copyright protection would only extend the benefit of Hutchinson's telephone monopoly and would not serve any purpose of the Copyright Act. As a result, this court is compelled to conclude that Hutchinson's white pages do not constitute original works of authorship within the meaning of the Act.

For these reasons, the court finds that Hutchinson does not hold a valid copyright in its white page listings. The second phase of the trial concerning copyright infringement will, therefore, not be necessary. Accordingly, judgment is entered in favor of the defendant.

IT IS SO ORDERED.