**HUTCHINSON TELEPHONE COMPANY, Appellant,**

v.

**FRONTEER DIRECTORY COMPANY OF MINNESOTA, INC., Appellee.**

**No. 84–5129.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1985.

Decided Aug. 13, 1985.

---

Alan G. Carlson, Minneapolis, Minn., for appellant.

Elliot S. Kaplan, Minneapolis, Minn., for appellee.

Before ROSS and BOWMAN, Circuit Judges, and OLIVER,* Senior District Judge.

BOWMAN, Circuit Judge.

Appellant Hutchinson Telephone Company (Hutchinson) charges appellee Fronteer Directory Company of Minnesota (Fronteer) with infringement of Hutchinson's copyright of its comprehensive alphabetical telephone directory for its service area (white pages). Hutchinson seeks an injunction and damages for the alleged infringement. The District Court determined as a matter of law that Hutchinson's white pages directory was not copyrightable, and entered judgment for Fronteer on that basis.

The District Court divided the trial into two phases. The first phase was to determine the copyrightability of Hutchinson's white pages directory; the second was to determine if a valid copyright had been infringed. Because the District Court found Hutchinson's white pages directory was not copyrightable, the second phase was not reached and judgment was entered in favor of Fronteer.

## I.

Hutchinson is a telephone company providing local service in the Hutchinson, Minnesota area. Under Minnesota law, Hutchinson is required to publish a telephone directory. 5 Minn.R. § 7810.2900 (1983). The directory Hutchinson publishes, for which it holds a copyright, contains a white pages section and a section including a topical listing of business telephone numbers together with advertising (yellow pages). Hutchinson charges its customers a fee for new or changed listings in the white pages as well as for yellow pages advertising. The cost of printing and distribution and the revenue earned on the

---

* The HONORABLE JOHN W. OLIVER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

**130**

directories is considered by the state in setting rates for Hutchinson's telephone service.

Fronteer publishes both white and yellow page directories which it markets commercially. One of the directories it publishes is for the town of Hutchinson, Minnesota and surrounding communities. Hutchinson alleges that in the preparation of this directory for the year 1982, Fronteer copied Hutchinson's white pages directory and incorporated it into the Fronteer directory.

## II.

The District Court, 586 F.Supp. 911 (D.C. Minn.1984), held that Hutchinson's white pages directory did not constitute an original work of authorship within the meaning of the Copyright Act of 1976, 17 U.S.C. §§ 101–810 (Copyright Act). It based this holding on its conclusion that the extension of copyright protection for a document that Hutchinson is required to publish as a condition of its state-sanctioned telephone monopoly would unduly extend the benefits of that monopoly in contravention of the purposes of the Copyright Act. The District Court used this rationale to distinguish a long line of cases in which white page telephone directories and similar publications were held to be copyrightable. *See, e.g., Leon v. Pacific Telephone and Telegraph Co.*, 91 F.2d 484 (9th Cir.1937); *National Business Lists, Inc. v. Dun & Bradstreet, Inc.*, 552 F.Supp. 89 (N.D.Ill. 1982); *Central Telephone Company of Virginia v. Johnson Publishing Co.*, 526 F.Supp. 838 (D.Colo.1981); *Southwestern Bell Telephone Company v. Nationwide Independent Directory Service, Inc.*, 371 F.Supp. 900 (W.D.Ark.1974).

The District Court cited nothing in the Copyright Act or its legislative history or any cases directly supporting its conclusion. Rather, it relied largely on the following quotation from a leading treatise on copyright law:

[T]he authorization to grant to individual authors the limited monopoly of copyright is predicated upon the dual premises that the public benefits from the creative activities of authors, and that the copyright monopoly is a necessary condition to the full realization of such creative activities. Implicit in this rationale is the assumption that in the absence of such public benefit the grant of a copyright monopoly to individuals would be unjustified.

M. Nimmer, *Nimmer on Copyright* § 1.03[A], at 1–30.1 (1984) (footnote omitted). Upon examining the Nimmer treatise, it is evident that the District Court quoted Professor Nimmer's language wholly out of context. The cited language is found in a discussion of the purposes of the constitutional provision granting Congress the specific power to legislate on the subject of copyrights. Professor Nimmer concludes this discussion with the following statement: "[T]he phrase 'To promote the progress of science and useful arts ...' [contained in the Copyright Clause of the United States Constitution must be read as largely in the nature of a preamble, indicating the purpose of the power [granted Congress to pass copyright legislation] but not in limitation of its exercise." *Id.* at 1–30.2 to 1–30.3 (footnotes omitted).

■ We agree with Professor Nimmer that although the promotion of artistic and scientific creativity and the benefits flowing therefrom to the public are purposes of the Copyright Clause, those purposes do not limit Congress's power to legislate in the field of copyright.[1] *See Schnapper v. Foley*, 667 F.2d 102, 112 (D.C.Cir.1981),

---

1. The cases cited by the District Court, *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 95 S.Ct. 2040, 2043, 45 L.Ed.2d 84 (1975) and *Universal City Studios v. Sony Corporation of America*, 659 F.2d 963 (9th Cir.1981), *rev'd*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) are not to the contrary. In *Aiken*, the Supreme Court found it necessary to consider the purposes of copyright protection in order to construe statutory provisions which had been rendered ambiguous by technological innovation. 422 U.S. at 156, 95 S.Ct. at 2043. With respect to *Universal City*, the District Court relied on dicta in the Ninth Circuit opinion and, in any event, the decision of the Ninth Circuit had been reversed by the Supreme Court before the District Court issued its opinion.

*cert. denied,* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 661 (1982); *Mitchell Brothers Film Group v. Cinema Adult Theater,* 604 F.2d 852, 860 (5th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980). To determine if Hutchinson's directory is copyrightable, we must examine the Copyright Act. First, we must decide whether the Act establishes copyright protection for works of the sort represented by Hutchinson's white pages directory. Next, we must determine whether anything in the Act excludes copyright protection for regulated business organizations such as Hutchinson with respect to directories they are required by law to produce.

The Copyright Act extends copyright protection to "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The legislative history states that the phrase "original works of authorship" was intended to codify without change the concept of "originality" applied by the courts under the prior copyright statute. H.R.Rep. No. 1476, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5664. "Originality" under the prior construction did not connote novelty or uniqueness but simply that the work be independently created. If a work is similar to preexisting works, it must show more than trivial variation from those works. *L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486, 490 (2d Cir.), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

Several specific categories of "original works of authorship" are defined in the Copyright Act. For instance, 17 U.S.C. § 102(a)(1) states that "literary works" are copyrightable. The legislative history of § 102(a)(1) states that "[t]he term 'literary works' does not connote any criterion of literary merit or qualitative value: it includes catalogs, *directories* and similar factual, reference or instructional works and compilations of data." H.R.Rep. No. 1476,

1976 U.S.Code Cong. & Ad.News at 5667 (emphasis added). It thus appears that Congress intended that directories be copyrightable, thereby ratifying an unbroken line of cases holding telephone directories to be copyrightable. *See* cases cited *supra* p. 3. As to originality, where a telephone directory is assembled from data collected and constantly revised by the telephone company, courts consistently have held that such a directory is copyrightable. *See, e.g., Leon,* 91 F.2d at 485. It is evident that a directory compiled by a telephone company from its internally maintained records may be said to be independently created. *Cf. L. Batlin & Son, Inc.,* 536 F.2d at 490.

As discussed, *infra,* Fronteer and the District Court never questioned the fact that Hutchinson, although under a state requirement, compiled and maintained the records on which the directory was based. Fronteer vigorously argues that the effort expended in transforming pre-existing records into a telephone directory is insufficient to meet the so-called "sweat of the brow" test relied on and quoted in *Leon.* That test is drawn from an earlier case and states:

> The man who goes through the streets of a town and puts down the names of each of the inhabitants, with their occupations and their street number, acquires material of which he is the author. He produces by his labor a meritorious composition, in which he may obtain a copyright, and thus obtain the exclusive right of multiplying copies of his work.

*Jeweler's Circular Publishing Co. v. Keystone Publishing Co.,* 281 Fed. 83, 88 (2d Cir.1922). Fronteer argues that Hutchinson gathered the records for billing purposes and that the directory was merely a publication of its customer listing requiring little or no new effort. Fronteer's focus is too narrow. Hutchinson's records are gathered and maintained for many purposes, including publication of a directory. The proper focus is not whether Hutchinson's sole motivation for maintaining the records is the publication of a directory,

but whether the directory itself is derived from information compiled and generated by Hutchinson's efforts. That Hutchinson alone solicited, gathered, filed, sorted, and maintained the information on which the directory is based is undisputed. The fact that Hutchinson requires its subscribers to supply the information in the directory under a state requirement is irrelevant: a telephone company would find it necessary to gather such information irrespective of any state-mandated requirement, if for no other reason than to bill customers for services provided.

■ Because we find these undisputed facts to establish that Hutchinson's directory is an original work of authorship we may decide the issue of copyrightability and no remand to the District Court on this issue is necessary. Where the facts on which an issue must be decided are undisputed, an appellate court may reverse on that issue without a remand. *Talley v. United States Postal Service*, 720 F.2d 505, 508 (8th Cir.1983).

■ We hold, therefore, that Hutchinson's telephone directory is an original work of authorship and therefore is copyrightable under the provisions of 17 U.S.C. § 102. It would appear also to be copyrightable under 17 U.S.C. § 103, which provides for the copyrightability of "compilations." A compilation is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

■ Further, we find nothing in the Copyright Act to support the District Court's conclusion that Hutchinson's directory is excluded from copyright protection on the ground that Hutchinson is required by law to publish a directory. While the Copyright Act does create certain narrow exceptions to copyrightability of works otherwise constituting original works of authorship, none of those exceptions applies here. *See* 17 U.S.C. §§ 104 (regulating copyright protection for foreign authors seeking copyrights in the United States), 105 (prohibiting copyright for either the United States government or its employees in works created by its employees in the course of their official duties); *see also id.* § 201 ("work for hire" provision, granting authorship rights in works produced under contract or in the course of employment to person for whom the work was done). Where Congress has enacted a clear and comprehensive statute pursuant to a broad constitutional grant of power, as it has here, it is not for the courts to undermine legislative intent by carving out exceptions that Congress did not choose to make. *Cf. Commissioner of Internal Revenue v. Gordon*, 391 U.S. 83, 93, 88 S.Ct. 1517, 1523, 20 L.Ed.2d 448 (1968) (court is not free to ignore requirements of statute merely because it considers them redundant or unsuited to a particular case).

Given our view of the Copyright Act, no policy analysis is required, but even if it were, the policy arguments relied upon by the District Court for excluding from copyright protection telephone directories produced under a state statutory mandate are not persuasive. The District Court apparently believed that the "extension" of Hutchinson's telephone monopoly to include copyright protection for its directories would result in something akin to the so-called "double subsidy" caused by permitting a government contractor to reap the benefits of copyright ownership for a work required to be produced under a government contract. We note, however, that Congress rejected the notion that this "double subsidy" required a prohibition against government contractors owning copyrights on works produced under government contracts. *See* H.R.Rep. No. 1476, 1976 U.S.Code Cong. & Ad.News at 5672. Moreover, common sense leads us to conclude that, state regulations aside, a telephone company would find it necessary to publish a white pages directory or face an avalanche of customer complaints. Finally, the District Court's conclusion ignores the fact that whatever monopoly power Hutchinson has is circumscribed by

pervasive state regulation of its policies, service, and pricing. The revenue Hutchinson earns from its copyrighted directories is considered by the state in setting Hutchinson's telephone rates. Thus, to afford copyright protection for Hutchinson's white pages directory hardly can be said to "extend" Hutchinson's monopoly in a manner contrary to the public interest. Indeed, to the extent that higher directory revenues result in lower rates for telephone service, copyright protection for Hutchinson's directories tends to serve the public interest.

### III.

For the reasons discussed above, we reverse the judgment of the District Court based on its determination of the copyrightability issue and remand the case for further proceedings to determine whether plaintiff's copyright has been infringed and what relief, if any, should be granted plaintiff under the circumstances.