**HUTCHINSON TELEPHONE CO.**

v.

**FRONTEER DIRECTORY CO. OF MINNESOTA, INC.**

Civ. No. 5–83–96.

United States District Court,
D. Minnesota,
Fifth Division.

Feb. 14, 1986.

Alan G. Carlson, Merchant, Gould, Smith, Edell, Welter & Schmidt, Minneapolis, Minn., for plaintiff.

Elliot S. Kaplan, Robins, Kelle, Larson & Kaplan, Minneapolis, Minn., for defendant.

## ORDER

ROSENBAUM, District Judge.

This cause is before the Court on plaintiff Hutchinson Telephone Company's (Hutchinson) motion for a preliminary injunction enjoining Fronteer Directory Company of Minnesota, Inc. (Fronteer) from any use of Hutchinson's copyrighted white pages. For the reasons stated below, the preliminary injunction is granted.

*Facts*

This litigation reaches the undersigned after a long and tortuous path. It has, in fact, been heard upon no fewer than three prior motions for preliminary injunction, it has been heard as half of a bifurcated trial, and has been appealed to the United States Court of Appeals for the Eighth Circuit. It is here today after remand. Plaintiff initially filed suit asserting, and still maintains today, that defendant infringed plaintiff's copyrighted white pages for the City of Hutchinson in defendant's production of telephone directories. The copyrighted material is the white pages directory prepared by Hutchinson as a part of its service as telephone company for the City of Hutchinson, Minnesota.

Defendant Fronteer also publishes a directory for an area which is larger in scope but which encompasses all of the area covered by plaintiff's white pages book. It is undisputed that from the 1983 edition until the 1985 edition, the white pages listings in Fronteer's book were taken from Hutchinson's white pages as annually updated. For 1986, Fronteer claims the innovation of having obtained data from the "Welcome Wagon" and other sources, but acknowledges that this new data is simply used to amend the original listings taken from the plaintiff's previous year's white pages. The basis of plaintiff's claim is its assertion that these actions constitute violations of federal copyright law, particularly 17 U.S.C. § 102.

The original complaint was filed in March, 1983. The case was tried on April 16, 1984. Having bifurcated the trial, the prior Court disposed of the case on the

limited issue of whether Hutchinson's white pages were a proper subject of copyright protection. The District Court held that Hutchinson's white pages were not an original work of authorship within the meaning of the Copyright Act, 17 U.S.C. §§ 101–810. *Hutchinson v. Fronteer,* 586 F.Supp. 911, 912–13 (1984). The Court therefore concluded that Hutchinson did not have a valid copyright and, hence, there could be no infringement. *Id.*

Appeal was taken to the Eighth Circuit, which reversed the District Court's determination of copyrightability and remanded the case to the undersigned for further proceedings. *Hutchinson v. Fronteer,* 770 F.2d 128 (1985). The Circuit Court concluded that Hutchinson's white pages are in fact an original work of authorship, and as such they are copyrightable under 17 U.S.C. § 102. 770 F.2d at 132. That Court further opined that the directory is also apparently copyrightable under 17 U.S.C. § 103 as a compilation. *Id.* With this decision in hand, Hutchinson now returns to the district court, seeking to enjoin defendant's continued use of Hutchinson's directory.

*Analysis*

The issuance or denial of injunctions in the Eighth Circuit is governed by the four-part analysis set forth in *Dataphase Systems v. C.L. Systems,* 640 F.2d 109, 114 (1981). In that decision the Court stated that:

> whether a preliminary injunction should issue involves consideration of 1) the threat of irreparable harm to the movant; 2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; 3) the probability that movant will succeed on the merits; and 4) the public interest.

*Id.* Plaintiffs assert, and the Court agrees, that the balance of these factors calls for the issuance of the requested injunction in this case.

A. Threat of Irreparable Harm to the Movant

▮ In a case seeking to enjoin a copyright infringement, there is precedent in the District of Minnesota and beyond linking the threat of irreparable harm to the movant to the probability of success on the merits, the third *Dataphase* factor. The decision in *Northwestern Bell Telephone Co. v. Bedco of Minnesota, Inc.,* 501 F.Supp. 299 (D.Minn.1980), is particularly persuasive. That decision granted a preliminary injunction in favor of Northwestern Bell stopping defendant's infringement on Bell's yellow pages. In its analysis of the harm to the movant, the Court there observed and applied "[t]he general rule in alleged copyright infringement cases ... that, for a preliminary injunction motion, irreparable injury is presumed once the movant has established a case of copyright infringement. [Citations omitted.]" *Bedco,* 501 F.Supp. at 303.

The language quoted above seems to require a determination that infringement has, in fact, occurred before the presumption of irreparable injury is triggered. A careful reading of the *Bedco* decision reveals that the presumption was raised even though no conclusive determination of the issue of infringement was made. *Id.*

Decisions of other circuits likewise extend the presumption of irreparable injury to cases in which a reasonable likelihood of success on the merits of a copyright infringement claim is demonstrated. The Seventh Circuit implicitly held that such a presumption exists when it reversed a trial court's denial of a preliminary injunction. *Atari, Inc. v. North American Phillips Consumer Electronics Corp.,* 672 F.2d 607, 620 (1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). The Ninth Circuit made the presumption explicit, stating that "a showing of a prima facie case of copyright infringement *or reasonable likelihood of success on the merits* raises a presumption of irreparable harm." *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (1983) (emphasis added). This same interconnection of prima facie copyright infringement with presumed irreparable injury is also

acknowledged in the Second Circuit, *see, e.g., Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759, and has received the blessings of Professor Nimmer. 3 Nimmer on Copyright, section 1406(A) at 14–51 and n. 16 (collecting authorities).

The extension of the *Bedco* presumption to cases in which infringement is not yet conclusively established, but in which success on the merits appears reasonably likely, comports with the circumstances generally present in the context of preliminary injunctions. The Court therefore adopts the presumption of irreparable injury once the movant has demonstrated a reasonable chance of success on the merits of its copyright infringement claim. A discussion of Hutchinson's chances of success on the merits appears below. For present purposes it is sufficient to note that those chances appear good. A presumption of irreparable injury is accordingly raised in this case, therefore satisfying the first element of the *Dataphase* analysis.

In addition to the presumption of injury, above, a denial of the proposed injunction will subject Hutchinson to yet another assault on its allegedly copyrighted material. Each time Fronteer completes another infringement in its use of Hutchinson's directory, that infringement has the effect of diminishing the value of one portion of plaintiff's stock in trade—its white pages. This diminution in value is tangible but difficult to measure; it is, thus, the type of injury which calls for injunctive relief.

This combination of diminished value of the copyrighted material coupled with the presumption of irreparable injury satisfies the first element of the *Dataphase* analysis.

B. Balance of Harms

■ Against the threat of irreparable injury discussed above, the injury to Fronteer resulting from the requested injunction is speculative at best, and entirely of its own making. Fronteer suggests its injury to be a loss of the income it has derived from the sale of space in its yellow pages section (income which it will presumably have to return if publication is halted) and to expenses in preparing the directory along with general loss of credibility in the event that publication is prevented.

The force of these injuries in the present context of injunctive analysis is weakened by several factors. First, the position taken by Fronteer's counsel in the argument on this matter suggests that the requested injunction may not prevent Fronteer from issuing a directory at all. The directory may simply be changed by the excision of Hutchinson's copyrighted material. Defendant offers no proof that the loss of the Hutchinson listings would render the remaining white pages and yellow pages any less desirable to advertisers. The publication, absent the infringed material, would still encompass the phone numbers of the surrounding communities and a community-wide, comprehensive, yellow page directory.

As to the second suggestion, that there would be a loss of Fronteer's credibility as a publisher, the suggestion is rejected out of hand. It is nothing more or less than an assertion that Fronteer's history of allegedly wrongful acts should now be credited in its favor. The Court is not persuaded that this result should follow.

Fronteer's commercial credibility, if any it has, is at least partially based on its demonstrated ability over four years to cut, paste and republish Hutchinson's validly copyrighted white pages listings. True, it may change the format from two columns to three, but in the end it simply copies (and potentially infringes), not only the accurate but even the erroneous listings in Hutchinson's protected material. To argue that year upon year of wrongful acts are now to be raised as an aspect of defendant's "credibility" turns equity on its head.

Further, Fronteer cannot realistically claim that the injuries it perceives that it, by the issuance of any injunction, will suffer come as any surprise. The facts are that for at least four years Hutchinson has

been unwilling to allow Fronteer's use of its copyrighted white pages. In 1982, Fronteer contacted Hutchinson seeking permission for their use. Hutchinson made its opposition clear, first by refusing to grant Fronteer a license, then by coming before this Court seeking injunctive relief on three separate occasions, and finally by appealing the District Court's denial of copyrightability to the Eighth Circuit. As is noted above, the Eighth Circuit ruled in Hutchinson's favor, holding the material in plaintiff's white pages to be copyrightable.

Fronteer's continued use of the Hutchinson white pages therefore takes place in the context of an adversary known to be hostile and a legal environment known to be unfavorable. Fronteer's decision to proceed can only be regarded as an informed assumption of a businessman's risk. As such, Fronteer's claim of injury resulting from its own actions is unpersuasive.

When the claimed injuries resulting from the issuance of an injunction to the non-moving party are as speculative on one hand and as disingenuous on the other, the Court finds that the balance of harms presented here tips decidedly in favor of the injured plaintiff.

### C. Likelihood of Success on the Merits

■ As was intimated in the analysis of Hutchinson's irreparable harm, above, plaintiff has substantial chances of success on the merits of its infringement claim. There appears to be little factual dispute that Fronteer copied the Hutchinson white pages and then used subsequent directories to update its own listings. The 1986 Welcome Wagon camps on a foundation of four year's accumulated reliance upon Hutchinson's copyrighted directories. Minnesota precedent, among other things, suggests that this factual predicate makes an infringement claim likely.

The *Bedco* decision, discussed above, involved defendant's copying of plaintiff's yellow page advertising for the purpose of soliciting business. 501 F.Supp. 299. In granting an injunction, that Court noted that "[i]t is clear that a subsequent compi-

ler who copies without authorization from an existing copyrighted directory and publishes the copied information in a competing directory may be held liable for copyright infringement." *Bedco*, 501 F.Supp. at 302 (citing *Leon v. Pacific Telephone & Telegraph Co.*, 91 F.2d 484, 486 (9th Cir. 1937); *National Research Bureau, Inc. v. Kucker*, 481 F.Supp. 612, 615 (S.D.N.Y. 1979); *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.*, 371 F.Supp. 900, 906 (W.D.Ark. 1974)).

The Court finds the quoted language compelling and of likely application to this case. Without reaching a final determination on the merits, it appears that in light of this precedent, Hutchinson stands a good chance of success on the merits of an infringement claim. This much Fronteer essentially concedes; the force of its argument with respect to plaintiff's chances of success focuses not on a dispute over the facts, but instead on its purported legal defenses of fair use and copyright misuse. The Court therefore turns to those defenses.

### 1. Fair Use

Defendant argues that its use of Hutchinson's white pages constitutes a fair use, and therefore that its activities are not infringing. Fronteer's probabilities for success on this defense are almost fatally diminished by the operation of a presumption holding commercial uses of copyrighted material to be unfair. This presumption was recently expressed by the United States Supreme Court as follows:

> every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright ....

*Sony Corp. v. Universal Studios*, 464 U.S. 417, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984).

Defendant's brief and argument fail to persuade the Court that this presumption is not applicable here. Its brief makes no attempt at all to argue that Fronteer's use was not commercial. At oral argument,

defendant's counsel raised the novel suggestion that since the public's use of Fronteer's white pages is itself predominantly non-commercial, Fronteer's facilitation of the public's use is also not commercial. Fronteer's concern for its loss of income in the event of an injunction seriously weakens its new-found assertion of an eleemosynary purpose.

In fine, there is little in the record as it now stands to indicate that Fronteer's use is anything other than commercial. Plaintiff therefore stands a good chance of successfully applying the Supreme Court's presumption of unfairness. These prospects in turn support the issuance of the requested injunction.

2. Copyright misuse

Fronteer asserts that plaintiff's pursuit of an injunction is part of an attempt to restrict competition and preserve monopoly in violation of federal antitrust laws. The alleged antitrust violations are extremely tenuous, and the demands of a determination that such violations were, in fact, committed by Hutchinson are virtually unsupported on the record currently before the Court.

The result for the purposes of injunctive analysis is that the Court is unable to assess Fronteer's prospects on its antitrust defense with complete precision. With this possible exception, then, plaintiff's chances of success on the merits of its infringement claim lend further support to its desired injunction, and the third variable of the *Dataphase* injunctive calculus, like the first two, counts in favor of an injunction in this case.

D. The Public Interest

■ In addressing the final element of *Dataphase* analysis, Fronteer relies largely on an asserted interest in the availability of its directory by the citizens in its coverage area. The Court finds that the conclusory affidavits of a few citizens of McLeod County do not at all define the public of concern; the copyright laws at issue here encompass the interests of a broader population.

A much more expansive and compelling public interest is represented in the underlying purpose of copyright protection itself—that of securing to people the fruits of their creative labors. *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984). The mandate, in the body of no less an authority than the Constitution of the United States, U.S. Const. art. I, sec. 8, cl. 8, and the comprehensive system of copyright protection set forth in Title 17, United States Code, Sections 101–810, reflects a determination that the public interest is furthered by an explicit system which encourages creativity by affording creators a defined monopoly in their creations. This policy is thwarted by infringements in violation of the copyright, such as are alleged to have been committed by the defendant here.

The Court therefore concludes that the nation's public interest in copyright protection is pertinent here, and that this interest supports the injunction sought by the plaintiff.

*Conclusion*

As discussed above, all of the factors to be considered when injunctions are sought argue in favor of an injunction in this case. For these reasons, IT IS ORDERED that:

1. Defendant Fronteer Directory Company of Minnesota is preliminarily enjoined from any use of the white pages of plaintiff Hutchinson Telephone Company.

2. This injunction shall be effective upon the plaintiff's filing with the Clerk of this Court a bond in the penal sum of $5,000.