**The TORO COMPANY, a Delaware corporation, Plaintiff-Appellant,**

v.

**R & R PRODUCTS CO., an Arizona corporation, Defendant-Appellee.**

No. 85–5240.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1986.

Decided March 28, 1986.

Reconsideration Denied May 14, 1986.

Robert T. Edell, Minneapolis, Minn., for plaintiff-appellant.

Brian B. O'Neill, Jeff H. Eckland, Minneapolis, Minn., for defendant-appellee.

Before HEANEY, BOWMAN and TIMBERS,* Circuit Judges.

* The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

TIMBERS, Circuit Judge.

The Toro Company ("appellant") appeals from a final judgment, as amended June 13, 1985, entered on the jury's verdict in the District of Minnesota, Robert G. Renner, *District Judge*, said judgment also incorporating an order dated December 10, 1984 dismissing appellant's copyright infringement claim against R & R Products Co. ("appellee") based on appellee's use of appellant's replacement parts numbering system. The jury found that, while appellee had infringed appellant's copyrights in certain replacement part drawings, appellant was entitled to no damages. The jury also found that appellee had not unfairly competed with appellant. Appellant raises a number of issues on appeal, the most significant of which are: whether the court erred in holding that appellant's parts numbering system was not copyrightable; whether the court erred in denying appellant's motion for judgment n.o.v. or a new trial on its unfair competition claim; and whether the court erroneously instructed the jury on the law of unfair competition. We hold that appellant's parts numbering system is not copyrightable because it lacks originality; the jury's verdict of no unfair competition is supported by the evidence; and the court properly instructed the jury on the law of unfair competition.[1] We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellant manufactures and sells a diverse line of professional lawn care machines and a full line of replacement parts for them. Appellee manufactures and sells a limited line of replacement parts designed to fit a number of brands of lawn care machines, including appellant's. Appellee and companies like it represent a fairly recent development in the lawn care industry. By manufacturing and selling only those types of replacement parts that are in high demand—those that wear out frequently—appellee can offer these parts to consumers at a considerable savings. The original manufacturers of the machines, like appellant, must offer a full line of replacement parts to ensure continued sales of their machines. Some of the overhead for manufacturing and stocking the full line of replacement parts is reflected in appellant's higher replacement part prices.[2]

Appellee's main sales tool is a catalog that it sends periodically to past and prospective customers. This catalog is central to the instant litigation. The catalog is composed of lists of various original manufacturers' replacement parts indexed according to their original manufacturer part name and part number. In some cases, like appellant's, the part names contain original manufacturer trademarks. Next to each original manufacturer part name and number is the part number for appellee's part which replaces the original manufacturer's part. Along side this is appellee's price. Appellant's part numbers tend to be five or six digit numbers with a hyphen inserted somewhere. Appellee's corresponding part numbers are identical except that they are preceded by the letter "R". Appellee's catalogs also contain certain "exploded" drawings of the parts it offers. At trial appellee admitted that it had "mistakenly" used copies of appellant's parts drawings in two of its catalogs, those for Fall 1982 and Spring 1983. Since then appellee has employed draftsmen to create similar drawings of its own parts. The catalogs also contain a disclaimer, printed at various pages throughout the catalog, stating:

---

1. Appellant also challenges the court's denial of its motion to impound the infringing materials, to enjoin future infringement, and to award attorneys' fees. These remedies, which are available to a prevailing party in a copyright infringement action, are to be granted only in the sound discretion of the court. *See* 17 U.S.C. §§ 502, 503, 505 (1982). Suffice it to say that, even if appellant were to be considered a prevailing party, the court did not abuse its discretion in denying appellant's motion.

2. The record indicates that appellee's prices generally are 10% to 25% below appellant's prices.

"All original equipment manufacturer's names, drawings, colors, and part numbers are used for identification purposes only, and we are in no way implying that any of our products are original equipment parts."

Customers wishing to order appellee's parts may either order directly from appellee by mail or purchase the parts from a local dealer who carries them.

On September 2, 1983 appellant commenced the instant action in the district court. The complaint alleged that: (1) appellee, through its catalogs, had infringed appellant's copyrights in its part drawings and parts numbering system; (2) appellee had engaged in unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), by palming off its parts as appellant's; and (3) appellee had engaged in deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43–.48 (1981). On October 23, 1984 appellee moved to dismiss that part of appellant's copyright infringement claim based on appellee's use of appellant's parts numbering system.[3] Appellee asserted that the parts numbering system was an uncopyrightable "system" under § 102(b) of the Copyright Act of 1976, 17 U.S.C. § 102(b) (1982) ("1976 Act"). In an order dated December 10, 1984,[4] the court dismissed that portion of appellant's copyright infringement claim based on appellee's use of appellant's parts numbers. The court held that § 102(b) of the 1976 Act precluded copyright protection for systems like appellant's parts numbering system.

A jury trial was held on appellant's remaining claims during the period March 25, 1985 to April 2, 1985. On April 2 the jury returned its verdict in the form of answers to special interrogatories. The jury found that appellee had infringed appellant's copyrights in the parts drawings, but found that appellant was entitled to no damages. The jury also found that appellee had not engaged in unfair competition nor had it violated the Minnesota Deceptive Trade Practices Act. On April 10 appellant moved for judgment n.o.v. or a new trial. Appellant also moved to impound and destroy the infringing catalogs, to enjoin appellee from future infringement, and to award it attorneys' fees.[5] In an order dated June 13, 1985, the court denied appellant's motions and entered a final judgment on the jury's verdict.

In the balance of this opinion we shall address the dismissal of appellant's copyright infringement claim based on its parts numbering system and then review the jury's verdict and the court's instructions on unfair competition.

## II.

Turning first to the dismissal of the copyright infringement claim, appellant argues that the court erred in holding that § 102(b) of the 1976 Act precluded copyright protection for its parts numbering system. We affirm the court's holding but we do so for different reasons.

Under the 1976 Act, any "original work[ ] of authorship fixed in any tangible medium of expression" is entitled to copyright protection. 17 U.S.C. § 102(a). Section 102(b), a proviso to § 102(a), states:

"In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."

This section is nothing more than a codification of the idea/expression dichotomy as it developed in the case law prior to passage of the 1976 Act. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 57, *reprinted in*

---

3. Prior to this time appellee had answered and counterclaimed that appellant's commencing the action violated the Sherman Act, 15 U.S.C. § 2 (1982). Appellant successfully moved to dismiss this counterclaim. Appellee has not appealed the dismissal.

4. The district court's order is reported at 600 F.Supp. 400 (D.Minn.1984).

5. *See* note 1 *supra.*

1976 U.S.Code Cong. & Ad.News 5659, 5670 ("Section 102(b) in no way enlarges or contracts the scope of copyright protection under the present law. Its purpose is to restate ... that the basic dichotomy between expression and idea remains unchanged."). The case law embodying the idea/expression dichotomy, which traces its roots back to *Baker v. Selden,* 101 U.S. 99 (1880), holds that copyright protection extends only to the expression of a particular idea, not the idea itself. The doctrine is grounded both in a presumed legislative intent to grant an author a monopoly only in his expressions—not his ideas—and in the First Amendment interest in the free exchange of ideas. *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 105 S.Ct. 2219, 2228–31 (1985).

■ In light of this history of § 102(b), the district court's literal application of the section's language—that appellant's parts numbering system is not copyrightable because it is a "system"—cannot stand. All that the idea/expression dichotomy embodied in § 102(b) means in the parts numbering system context is that appellant could not copyright the idea of using numbers to designate replacement parts. Section 102(b) does not answer the question of whether appellant's particular expression of that idea is copyrightable.

■ Appellee urges that we uphold the court's ruling by assuming that under the rubric of § 102(b) the court actually was applying the doctrine of merger. Although we doubt that the court intended to invoke the doctrine, it is irrelevant since we are convinced that appellant's parts numbering system does not fall within the small category of works to which merger applies. Under the copyright law doctrine of merger, a close cousin to the idea/expression dichotomy, copyright protection will be denied to even some *expressions* of ideas if the idea behind the expression is such that it can be expressed only in a very limited number of ways. The doctrine is designed to prevent an author from monopolizing an idea merely by copyrighting a few expressions of it. *Morrissey v. Proc-*

*ter & Gamble Co.,* 379 F.2d 675, 678–79 (1st Cir.1967) (copyright protection will be denied when "by copyrighting a mere handful of forms, [a party] could exhaust all possibilities of future use of the substance [of the idea]."). *Cf. Baker v. Selden, supra,* 101 U.S. at 103 (if particular expression is necessary to an idea, expression is not copyrightable). We do not believe that the idea of a parts numbering system is susceptible of only a very limited number of expressions. Such systems will vary in complexity and composition as the type of information attempted to be encoded into the designation and the method of encoding varies. Granting a particular company a copyright in its own system or systems would not necessarily monopolize the idea of a parts numbering system.

■ We believe, however, that the court's holding in the instant case that appellant's parts numbering system is not copyrightable should be affirmed for a more basic reason. As stated above, in order to sustain copyright protection under the 1976 Act, the parts numbering system must be within the subject matter of copyright—it must be an original work of authorship fixed in a tangible medium of expression. While it is clear that appellant's parts numbering system is adequately "fixed", we hold that it lacks the requisite originality to sustain copyright protection. Originality is undefined in the 1976 Act, but the legislative history makes clear that the pre-existing case law on originality is meant to apply without change. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 51, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5664; *Hutchinson Telephone Co. v. Fronteer Directory Co.,* 770 F.2d 128, 131 (8th Cir.1985). Under originality case law a work need not be artistic or novel to achieve protection. *Mazer v. Stein,* 347 U.S. 201 (1954). Originality denotes only enough definite expression so that one may distinguish authorship. *Id.* at 214 ("they must be original, that is, the author's tangible expression of his ideas."); *Barrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 60 (1884) (photograph is copyrightable

because author's efforts in composing subject shows photograph was "an original work, the product of plaintiff's intellectual invention"). If the disputed work is similar to a pre-existing protected work or one in the public domain, the second work must contain some variation recognizable as that of the second author. *L. Batlin & Sons, Inc. v. Snyder,* 536 F.2d 486 (2nd Cir.) (en banc), *cert. denied,* 429 U.S. 857 (1976); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 191 F.2d 99, 103 (2nd Cir.1951) (in order for a copy of a work in the public domain to be original, the author must have "contributed something more than a 'merely trivial' variation, something recognizably 'his own.' ").

We recently have had occasion to discuss the requisite originality for copyright protection. In *Hutchinson Telephone Co. v. Fronteer Directory Co.,* 770 F.2d 128 (8th Cir.1985), we considered whether a telephone white pages directory was original enough for copyright protection. We held that, since the directory's author had "solicited, gathered, filed, sorted, and maintained the information" used in the directory, the directory was "derived from information compiled and generated" by the author's efforts. The directory, therefore, was original within the meaning of § 102(a). *Id.* at 132.

■ Applying these principles to appellant's parts numbering system, we hold, consistent with the decisions of our Court, that the system lacks the requisite originality for copyright protection. The undisputed evidence below shows that appellant's "system" is composed of arbitrarily assigning to a particular replacement part a random number when appellant creates the part. Appellant's Vice President for Distribution testified that once a part is created "an arbitrary number is assigned" to the part to identify it. Appellant's counsel, when moving for a new trial, told the court that "it was undisputed at trial that Toro's

parts numbering system was arbitrary and random." There was no evidence that a particular series or configuration of numbers denoted a certain type or category of parts or that the numbers used encoded any kind of information at all. In short, numbers were assigned to a part without rhyme or reason. This record establishes that appellant's parts numbering "system" falls short of even the low threshold of originality. The random and arbitrary use of numbers in the public domain does not evince enough originality to distinguish authorship. The expression itself is nothing more than the public domain numbers. There is no variation, other than the trivial hyphen, to establish authorship. Also, it is clear that no effort or judgment went into the selection or composition of the numbers, which distinguishes this case from the telephone directory cases. We are left, then, with the accidental marriage of a part and a number. We do not believe that such a marriage produces an original work of authorship. Appellant simply has not added enough to its parts numbers to make them original and remove them from the public domain. This is not to say that all parts numbering systems are not copyrightable. A system that uses symbols in some sort of meaningful pattern, something by which one could distinguish effort or content, would be an original work. Originality is a very low threshold, but still a threshold. Since appellant's parts numbering system has not crossed this threshold, we affirm the district court's dismissal of appellant's copyright infringement claim based on the system.[6]

### III.

■ This brings us to the unfair competition claim. Appellant argues that the court erred in not granting appellant's motion for a judgment n.o.v. or a new trial. Appellant has assumed a heavy burden in challenging the court's discretion in refusing to second-guess the jury. In reviewing such a claim,

---

**6.** We are mystified by the statement of appellant's counsel at oral argument that appellee's use of appellant's parts numbers was not a copyright infringement, but appellee's use of the parts numbers preceded by the letter "R" was. Such flawed logic strikes us as underscoring the weakness of appellant's copyright infringement claim based on the parts numbering system.

we must view the evidence in the light most favorable to appellee and resolve inferences in appellee's favor. If the evidence so viewed supports the jury's verdict, we must affirm the court's denial of appellant's motion. *Jackson v. Prudential Insurance Co.*, 736 F.2d 450, 453 (8th Cir. 1984). We hold that appellant has not sustained this heavy burden.

Appellant's unfair competition claim was based on § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[7] This section creates a federal tort of unfair competition based on "false designation of origin or other false representation used in connection with the sale of a product." *Metric & Multistandard Components Co. v. Metric's Inc.*, 635 F.2d 710, 713 (8th Cir.1980). Appellant sought at trial to prove that appellee had "palmed off" its goods as appellant's. We have held that the "key to finding a violation under section 43(a) is a determination that the materials used by the defendant created a likelihood of confusion, deception or mistake on the part of the consuming public." *Id.* at 714.

■ Appellant's evidence on the likelihood of appellee's customers being confused as to who manufactured the parts they purchased was not compelling. After seven years of head to head competition, appellant could produce only one customer of appellee who testified that he thought he was purchasing appellant-made parts when he ordered from appellee. The jury reasonably could have inferred from this scant showing that there were few other customers who actually were confused. Appellant also introduced some of appellee's customers' order forms in which the customer had ordered parts using only appellant's part numbers and trademarks. This evidence

was equivocal at best since all customers listed appellee's lower prices, not appellant's prices. The jury quite properly could have inferred from these forms that the customers wanted appellee to fill their orders with appellee's equivalent, cheaper parts. Appellant also introduced some of appellee's invoices that listed only appellant's part numbers and trademarks. Appellee rebutted this evidence with other invoices in which it had used its own part numbers and with testimony that use of appellant's numbers was a clerical error probably transposed from a customer order form. Most important from the standpoint of appellee, however, was the mute testimony of the catalogs themselves. Although the catalogs do reference appellant's parts numbers and trademarks, each listing is prefaced by phrases like "to fit" or "replaces". Moreover, the disclaimer, which appears throughout all the catalogs, is quite explicit in warning customers that all references to original manufacturers' equipment is for identification purposes only. While appellee admitted mistakenly using appellant's parts drawings in two of its catalogs, the confusing effect of this "mistake" was undercut by the fact that appellee's own internally produced drawings were nearly identical to appellant's drawings anyway. Finally, appellee introduced a survey of a sample of its customers which we must view as indicating that there was no confusion as to who manufactured the parts appellee sold.

We believe that the jury, after sorting through all the evidence presented, properly could have found that appellant showed no likelihood of confusion. It was perfect-

7. Section 43(a) provides:
"(a) Civil action
Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the

falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to [sic] a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

ly reasonable to have found that appellee's customers—professional grounds keepers for the most part—were not likely to be confused into believing that appellee sells appellant's parts by a catalog which clearly indicates that appellee sells only its own parts at a significant discount from what appellant charges. Appellant has not pointed to any compelling evidence in the record that requires a different result. We hold that the court properly denied appellant's motion for a judgment n.o.v. or a new trial.

Appellant also argues that the court improperly instructed the jury on the law of unfair competition. In reviewing the court's instructions, we must read them as a whole and consider them in light of the entire charge. *Tribble v. Westinghouse Electric Corp.*, 669 F.2d 1193, 1197 (8th Cir.1982), *cert. denied*, 460 U.S. 1080 (1983). The charge as a whole must state the governing law fairly; technical imperfections or a lack of absolute clarity will not render the instructions erroneous. *Crimm v. Missouri Pacific Railroad Co.*, 750 F.2d 703, 711 (8th Cir.1984). Appellant argues that the court's instruction on the relationship between evidence of actual confusion and the likelihood of confusion was erroneous. The court, after explaining what § 43(a) prohibits and that a finding of likelihood of confusion to source was crucial to a § 43(a) violation, instructed the jury as follows:

"Evidence of actual confusion is the best evidence of likelihood of confusion. The law, however, does not require that Toro show evidence of actual confusion if it proves a likelihood of confusion through other evidence.

You may consider the number of instances of actual confusion found over a period of several years. If only a few such instances exist over a long period of time, then this would weigh in favor of a finding of no likelihood of confusion.

In determining whether R & R created a likelihood of confusion, you should con-

sider the general impression of an ordinary purchaser of replacement parts for grass mowing equipment, buying under the normal conditions of the market and giving the attention such purchasers usually give in buying such parts."

As stated above, appellant's evidence of actual confusion, consisting of one customer's testimony and some order forms and invoices, was not overwhelming. Appellant argues, however, that *any* evidence of actual confusion should require the court to instruct the jury that it can presume a likelihood of confusion. Appellant claims that the court erroneously instructed the jury that it could consider evidence of only a few instances of actual confusion over a long period as weighing against a likelihood of confusion. Appellant has misperceived the law under § 43(a). While in a trademark infringement action under § 32(1), 15 U.S.C. § 1114(1), we have stated that "actual confusion is not essential to a finding of trademark infringement, although it is positive proof of likelihood of confusion", *Squirtco v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980), we also have held that "resolution of [the likelihood of confusion] issue does not hinge on a single factor but requires a consideration of numerous factors". *Id.* In a § 43(a) case, in which the plaintiff is attempting to prove that the defendant "palmed off" his products as those of the plaintiff, little evidence of actual confusion over years of direct competition may be considered by the jury as indicative of no palming off. *E.g., Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), *cert. denied*, 449 U.S. 899 (1980) ("the fact that only three instances of actual confusion were found after nearly 15 years of extensive concurrent sales ... raises a presumption against the likelihood of confusion"). Moreover, reading the court's charge as a whole, we are convinced that it fairly stressed the importance of appellant's proving a likelihood of confusion, of which actual confusion evi-

dence, although not necessary, is the best possible proof. We hold that the court's instructions on unfair competition, although not model instructions, fairly stated the law as applied to the evidence presented.[8]

## IV.

 To summarize: We hold that appellant's parts numbering system is not copyrightable because it lacks originality. The arbitrary assignment of randomly chosen numbers to a particular replacement part does not evince enough authorship for copyright protection. We also hold that the district court properly denied appellant's motion for a judgment n.o.v. or a new trial on the unfair competition claim under § 43(a) of the Lanham Act. Appellant presented meager evidence on the likelihood that appellee's customers would be confused as to the source of appellee's parts. Both the nature of appellee's customers and its sales materials weigh heavily against any possible confusion. The record amply supports the jury's finding of no unfair competition. Finally, we hold that the district court did not commit reversible error in its instructions to the jury on the law of unfair competition in view of the evidence presented. In the last analysis, appellee has not committed a wrong in aggressively competing with appellant for a share of its replacement parts market. While federal law prohibits a competitor from taking advantage of another's intellectual property or from palming off its products as another's, the law does not foreclose a competitor from zeroing in on a profitable market segment and offering an alternative product.

Affirmed.

---

8. Appellant also argues that the court's instructions were defective in a number of other less significant ways. We have examined these claims and find them to be without merit. The claims boil down to appellant's assertion that the court erred in not including certain specific instructions on various elements of unfair competition. Although more detailed instructions might have been helpful, the court did not err in refusing to focus the jury's attention on specific portions of appellant's proof. Also, appellant's proposed instructions, in some instances, were misstatements of the law and highly prejudicial. Finally, appellant's claim that the court erred in its response to the jury's question about the availability of punitive damages under the 1976 Act is without merit. The court correctly construed the question and rightly informed the jury that the 1976 Act makes no provision for such damages. *See* 17 U.S.C. § 504.