**EDWARD B. MARKS MUSIC COR-
PORATION, Plaintiff,**

**v.**

**COLORADO MAGNETICS, INC., c/b/a
Sound Values, Inc., et al., Defendants.**

**No. Civ–73–85.**

United States District Court,
W. D. Oklahoma.

April 18, 1973.

Charles B. Lutz, Jr., Speck, Philbin & Fleig, Attys., Inc., Oklahoma City, Okl., and Robert C. Osterberg, Abeles, Clark & Osterberg, New York City, for plaintiff.

Jerry J. Dunlap, and Charles A. Codding, Dunlap, Laney, Hessin & Dougherty, Oklahoma City, Okl., for defendants, Colorado Magnetics, Inc., Randy Sherman, and Harry Cummings, Jr.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CHANDLER, District Judge.

Plaintiff having moved this Court for a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, and said motion having come on to be heard before this Court on February 16, 1973, the Court, with the consent of the parties hereto ordered that the trial of the action on the merits be advanced and consolidated with the hearing of said application, the Court having granted, by Order dated March 15, 1973, the joint motion of the parties for an Order pursuant to Rule 42(a) of the Federal Rules of Civil Procedure separating the trial of the issue of liability herein. And the Court having heard and considered the evidence, all deposition testimony and exhibits, and the briefs of the parties, finds the facts and states the conclusions of law as follows:

## FINDINGS OF FACT

1. The Plaintiff Edward B. Marks' Music Corporation (Marks) is a New York corporation having its principal place of business in New York City, New York. Joseph Auslander was the President of MARKS at the time of filing of this suit and at all times material to this suit.

2. The Defendant Colorado Magnetics, Inc. (Magnetics) is a Colorado corporation and was domesticated in the State of Oklahoma in November of 1972. Magnetics has a place of business located in Oklahoma City, Oklahoma and has three tradenames: Sound Values, Inc.; Sound Values Marketing Corp.; and Magnetic Recorders, Inc., each of said tradenames being registered in the State of Oklahoma as a corporate tradename of Colorado Magnetics, Inc.

3. The Defendant Randy Sherman (Sherman) is an individual residing in Oklahoma City, Oklahoma and is the President of Magnetics.

4. The Defendant Harry Cummings, Jr. (Cummings) is an individual residing in Oklahoma City, Oklahoma and is the Secretary-Treasurer of Magnetics.

5. The Plaintiff has brought this lawsuit alleging the Defendants Sherman, Cummings and Magnetics have infringed certain of its copyrighted musical compositions. The Defendants have answered denying infringement and asserting affirmative defenses that the Defendants' use of the Plaintiff's musical compositions in suit is within the compulsory license provision of the Copyright Law and that the Plaintiff is estopped to deny the Defendants' use is not within the compulsory license provision of the Copyright Law, the Defendants further asserting that the Plaintiff's musical compositions in suit are unenforceable against the Defendants because of the Plaintiff's inequitable conduct, unclean hands and misuse of its musical compositions in suit.

6. Marks is a music publisher and, in general, acquires title to various musical compositions from the respective authors/composers via assignments or agreements. Marks then registers its claim to copyright or records its assignment of a claim to copyright in the various musical compositions. Marks derives income via its ownership of the copyrights in the various musical compositions through such uses as recording uses, public performance uses and motion picture sound track uses.

7. This case involves Marks' right to receive compensation for recording uses of the musical compositions controlled by it. When an individual or company desires to produce a sound recording uti-

lizing musical compositions controlled by Marks, the individual or company either negotiates with Marks for a license or, in those instances where Marks has previously acquiesced in the recording use of a particular musical composition, the individual or company desiring to use the musical compositions may serve notice of intention to use the musical compositions on Marks in accordance with the compulsory license provision of the Copyright Law. In either event, Marks receives what is referred to as a "mechanical royalty" for each recording use of its musical compositions from the licensees, either negotiated licenses or licenses obtained in accordance with the compulsory license provision of the Copyright Law.

8. Marks introduced a considerable amount of background evidence relating to the performance of the recording artist, the costs incurred by some of the major recording companies, such as CBS and RCA, for producing recordings of various musical compositions and the promotion efforts of these recording companies and the music publisher with respect to obtaining public acceptance of a particular musical composition or recording thereof. None of the Plaintiff's witnesses were able to testify from their own knowledge, nor was any evidence produced as to the recording or promotion costs incurred by their companies relating to recordings of the musical compositions in suit. However, all of this evidence was considered by the Court as background evidence in reaching the Court's determination of the legal and factual issues involved in this case.

9. The Plaintiff and the Defendants are not in competition, and neither the recording companies represented by the Plaintiff's witnesses, nor the performing artists are parties in the present case.

10. After acquiring control of the copyrights of the musical compositions in this case, Marks licenses the right to record the musical compositions to various recording companies through a licensing agent, The Harry Fox Agency,

Inc., along with some 3500 other music publishers. A number of licenses to various recording companies were introduced into evidence signed by a representative of The Harry Fox Agency, Inc. on behalf of Marks. The license agreements between Marks and the various recording companies show that Marks has obtained a number of different licenses for the identical recording of the same musical composition. Marks issues separate licenses for each album marketed by a recording company, even in those instances where the recording of a particular musical composition was released on earlier albums by the same recording company; the licenses are issued at various royalty rates; the royalty rates vary depending upon the licensed manufacturer; the retail selling prices of the recordings are specified in the license agreements; the marketing and distribution channels through which the recordings are to be made available to the public are frequently specified; and the particular packaging of the recording is frequently specified. The basis for calculating the royalty to be paid to Marks is also varied, such as being based on recordings manufactured and sold; the recordings sold; and/or the recordings sold with a specified percentage allowance for returned recordings.

11. The Plaintiff has numerous licenses issued to Ampex Corp. for duplicating recordings containing musical compositions owned and controlled by the Plaintiff utilizing recordings previously manufactured and sold by other recording companies. The licenses issued to Ampex Corp. by the Plaintiff or its agent, The Harry Fox Agency, Inc., clearly state that the Plaintiff or its agent The Harry Fox Agency, Inc. has been advised that the Ampex Corp. wishes to use the musical compositions owned by the Plaintiff under the compulsory license provision of the Copyright Law upon parts of instruments serving to reproduce mechanically the copyrighted work, and that upon doing so, the Ampex Corp. shall have all the

rights which are granted to, and all obligations which are imposed upon, users of the Plaintiff's copyrighted works under the compulsory license provision of the Copyright Law. These license agreements to the Ampex Corp., on their face, indicate that the Ampex Corp. is duplicating recordings previously manufactured and sold by other recording companies and, as far as the Plaintiff is concerned, the acts of the Ampex Corp. are identical with the acts of the Defendants in this lawsuit in manufacturing duplicate recordings of works previously recorded and sold by other recording companies. The Plaintiff has clearly recognized and continues to recognize the acts of the Ampex Corp. as being within the compulsory license provision of the Copyright Law.

12. The Defendants have invested a substantial sum of money in advertising, equipment and the leasing of adequate facilities to accommodate the Defendants' manufacturing facilities as evidenced by the various checks of the Defendants and the lease agreement of the Defendants introduced into evidence by the Plaintiff. The evidence and the testimony of Mr. Auslander clearly shows that the Plaintiff's descriptions and characterizations of the Defendants as engaged in "hit-and-run bootlegging" were erroneous and without any substantial factual basis reasonably supporting such conclusions. Mr. Auslander did not, in fact, possess any information nor was he informed of any facts reasonably supporting such statements and references made relative to the Defendants in this case. Mr. Auslander's sources of information and belief, according to his testimony, consisted of documents contained in the files of the Plaintiff's counsel (Abeles, Clark & Osterberg). These documents consisted of a Xerox copy of a letter having the date and addressee blanked out, but allegedly addressed to an informant and supposedly written by Sherman from Colorado Springs and a list attached to the letter. Sherman testified that the list was not the property of any of the named Defendants and no evidence was introduced tending to show that the list was that of Defendants.

13. Mr. Auslander testified that this lawsuit was financed from a contingency fund created and maintained by The Harry Fox Agency, Inc. from the percentages charged to each music publisher principal of The Harry Fox Agency, Inc. for the agency's services in licensing and enforcing the mechanical recording rights of the music publisher principals of The Harry Fox Agency, Inc.

14. The attorneys for The Harry Fox Agency, Inc. (Abeles, Clark & Osterberg) wrote to the Defendants in July, 1971, August, 1971, September, 1971, October, 1971, October, 1972 and January, 1973, accusing the Defendants of being engaged in the distribution of unauthorized recordings and threatening the Defendants with an infringement action and ex parte seizure of infringing articles and equipment.

15. The Plaintiff was represented during the discovery proceedings and at the trial in this case by the attorneys for The Harry Fox Agency, Inc. (Abeles, Clark & Osterberg) and the letters of July, 1971, August, 1971, September, 1971, October, 1971, October, 1972 and January, 1973, were written by the law firm Abeles, Clark & Osterberg on behalf of its client The Harry Fox Agency, Inc., and these letters were introduced into evidence by the attorneys (Abeles, Clark & Osterberg) representing the Plaintiff.

16. Prior to the commencement of this suit, the Defendants made a good faith offer to cooperate with any music publisher in verifying the accounting of the Defendants' uses of musical compositions of the music publisher. In response, this lawsuit was instituted by the Plaintiff.

17. Mr. Auslander testified that he had not seen nor was he aware of the letter written to the attorneys (Abeles, Clark & Osterberg) representing the Plaintiff in the trial of this case wherein the Defendants offered to cooperate

with any music publisher in verifying the accounting of Magnetics.

18. The Plaintiff, in combination with other music publishers, controls and licenses the right to record the copyrighted musical compositions owned or controlled by the Plaintiff and other music publishers via a common licensing agent, The Harry Fox Agency, Inc. The Plaintiff's conduct with respect to its copyrighted musical compositions, including the musical compositions in suit, involves:

a. The Plaintiff's licensing policies wherein the Plaintiff licenses the copyrighted musical compositions at different royalty rates and with different license provisions, including: terms fixing the maximum retail selling price of particular albums manufactured under license agreements with the Plaintiff; terms controlling the marketing and distribution channels through which the recordings manufactured under licensing agreements with the Plaintiff are made available to the public; and terms conditioning the Plaintiff's license upon the licensee obtaining rights from third parties in uncopyrighted sound recordings.

b. The use of the combination of the Plaintiff and its licensing agent The Harry Fox Agency, Inc. in combination with the other music publishers pooling the control of the mechanical recording rights of the copyrighted musical compositions, including the musical compositions in suit, thereby substantially increasing and expanding the statutory copyright monopoly of the Plaintiff by virtue of the combination and not by virtue of the value or contribution represented by any one musical composition.

c. The use of the combination formed by the Plaintiff and its agent The Harry Fox Agency, Inc. and the use of the pooled moropoly power resulting from the combination for the purpose of instituting and financing this litigation from a common contingency fund accumulated via The Harry Fox Agency, Inc. from the mechanical royalties received on behalf of the music publishers represented by The Harry Fox Agency, Inc., including the Plaintiff, represents and dramatically illustrates the threatened destructive force resulting from the pooled combination of the mechanical rights in the copyrighted musical compositions.

d. The Plaintiff and its agent The Harry Fox Agency, Inc. have used the expansion of the copyright monopolies of the Plaintiff and other music publishers for the express purpose of destroying the business of the Defendants. This fact is dramatically illustrated by the Plaintiff's expressed intention to refuse mechanical royalties from the Defendants regardless of the amount, and the Plaintiff's and Plaintiff's agent's total disregard for the Defendants' offer of cooperation in verifying the mechanical royalties paid by the Defendants.

e. The use of the combination of the Plaintiff and its agent The Harry Fox Agency, Inc. in combination with other music publishers, and the use of the resulting expansion of the Plaintiff's copyright monopoly, as a power for indiscriminately serving notices of infringements and demands of cease and desist upon individuals and companies without any substantial, good faith basis represents the Plaintiff's and its agent's, The Harry Fox Agency, Inc., use of the extension of the copyright monopoly to force compliance with its desires and to further its purposes for maintaining and increasing the extension of the copyright monopoly.

f. The Plaintiff's use of its copyright monopolies in combination with the copyright monopolies licensed via its agent The Harry Fox Agency, Inc. for instituting and financing this suit against the Defendants represents an attempt on the part of the Plaintiff and its agent The Harry Fox Agency, Inc. to prevent the Defendants, from availing themselves of the compulsory license provision of the Copyright Law and in dictating the manufacturers who may avail themselves of the compulsory license provision of the Copyright Law.

19. The Defendants, Sherman and Cummings, began doing business in Colorado prior to the summer of 1971 under the business name "Combined Tape Services", but none of the activities of Sherman and Cummings prior to the summer of 1971 involved any of the musical compositions in suit nor any of the issues involved in this case.

20. Magnetics was formed in September, 1971. Magnetics purchases commercially available, uncopyrighted sound recordings and utilizes the purchased sound recordings to manufacture "master tapes", each master tape containing selected songs comprising a particular album desired. The master tapes are utilized to produce what is referred to as a "pancake", a tape containing a number of duplications of a particular master tape. The pancakes are then utilized to produce the individual albums for sale and distribution by Magnetics.

21. About September, 1971, Magnetics began doing business with a company named Magnitron, Inc., located in Oklahoma City, Oklahoma. During the existence of the business relationship between Magnetics and Magnitron, Magnitron selected certain musical compositions to be included on the albums of Magnitron and Magnetics manufactured master tapes containing the selected musical compositions and produced duplications of the musical compositions in the form of "pancakes" which were sold to Magnitron for its use in manufacturing albums for sale and distribution to the public by Magnitron.

22. During the business relationship between Magnetics and Magnitron, it was the responsibility of Magnitron to file the Notices of Intention to Use and to pay the mechanical royalties to the various copyright owners for each of the musical compositions used in manufacturing the albums packaged and sold to the public by Magnitron.

23. Sherman testified that he personally observed Magnitron preparing various Notices of Intention to Use and monthly mechanical royalty reports for mailing to the various copyright owners. Magnetics, Sherman and Cummings were never given any reason to believe that all of the required Notices of Intention to Use and all of the mechanical royalties due to the various copyright owners were not served and paid by Magnitron for each of the musical compositions, including the musical compositions involved in this suit.

24. A number of Magnitron's Notices of Intention to Use and royalty payment reports were produced from the files of Marks.

25. After August, 1972, the business relationship between Magnitron and Magnetics was terminated and Magnetics began manufacturing and selling albums of musical compositions to the public via direct sales and mail order sales on its own behalf.

26. After August, 1972, Magnetics filed Notices of Intention to Use and tendered the monthly mechanical royalties to the various copyright owners in accordance with the compulsory license provision of the Copyright Law, including the Plaintiff's musical compositions in suit. Mr. Auslander, President of Marks, testified that Marks had received the Notices of Intention to Use and the monthly mechanical royalties from Magnetics for each of the musical compositions involved in this case. Mr. Auslander further testified that he knew of no reason to believe the monthly mechanical

royalty reports submitted to Marks by the Defendants were not correct.

27. Based on the documentary evidence, the testimony of Mr. Auslander, Sherman and Cummings, the Court concludes and specifically finds that the Defendants, in fact, have mailed the required Notices of Intention to Use and have, in good faith, tendered the monthly mechanical royalties to the Plaintiff for each and every musical composition involved in this suit in accordance and in compliance with the compulsory license provision of the Copyright Law.

28. The Defendants have maintained adequate records of their manufacture and sale of recordings using the musical compositions in suit in accordance with and in compliance with the compulsory license provision of the Copyright Law.

29. The acts of the Defendants have not injured nor damaged the business of the Plaintiff in any manner. The only injury sustained by the Plaintiff, if any, appears to result from the action of the Plaintiff and its agent The Harry Fox Agency, Inc. in refusing to accept the monthly mechanical royalty payments tendered by the Defendants.

30. Mr. Auslander testified that the Plaintiff would not and had no intention of accepting any payments, regardless of the amount, tendered by the Defendants.

31. The actions and conduct of the Plaintiff and its agent The Harry Fox Agency, Inc., as evidenced by the correspondence between the Defendants and the Plaintiff's agent and the institution of this lawsuit immediately after receiving an offer from the Defendants to cooperate with any music publisher in verifying the Defendants' accounting of mechanical royalty payments, show a clear purpose on the part of the Plaintiff, its agent The Harry Fox Agency, Inc. and the other music publishers who combined with the Plaintiff to extend the copyright monopoly of the Plaintiff and the others combined with the Plaintiff operating via The Harry Fox Agency, Inc. to obtain control over and the exclusive right to determine the particular manufacturers who may avail themselves of the compulsory license provision of the Copyright Law contrary to the specific statutory language limiting the copyright owner's exclusive right to record to the first or initial authorized recording use of the copyright owner's musical compositions and thereafter making the musical compositions available by law to anyone complying with the compulsory license provision of the Copyright Law including the Defendants in this case.

32. The purpose of the Plaintiff, its agent The Harry Fox Agency, Inc. and those in combination with the Plaintiff licensing via the common agent The Harry Fox Agency, Inc. is to extend the copyright monopoly for the purpose of maintaining control over the maximum selling prices of products produced utilizing the copyrighted musical compositions, the packaging of the products produced utilizing the copyrighted musical compositions, the marketing and distribution channels of the record products produced by others utilizing the copyrighted musical compositions in an effort to restrain competition and limit the availability of the compulsory license provision of the Copyright Law.

33. The Court specifically finds that the Defendants have not infringed any of the Plaintiff's copyrighted musical compositions in suit.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this suit by virtue of Title 28 of the United States Code, Section 1338(a) and this action arises under an Act of Congress (the Copyright Law of the United States as codified in Title 17 of the United States Code).

2. The Defendants' manufacture of duplicate sound recordings is a use of the Plaintiff's musical compositions within the compulsory license provision of the Copyright Law [17 U.S.C. §§ 1(e), 101(e)].

3. The Defendants have complied with all provisions of the compulsory license provision of the Copyright Law [17 U.S.C. §§ 1(e), 101(e)].

4. The Defendants' Notices of Intention to Use and the Defendants' tendered payments of the statutory royalties for the Defendants' uses of the Plaintiff's copyrighted musical compositions in suit are in compliance with the compulsory license provision of the Copyright Law [17 U.S.C. §§ 1(e), 101(e)].

5. The Defendants have not infringed any of the Plaintiff's copyrighted musical compositions by selling or contributing to, participating in, or knowingly furthering the sale of sound recordings serving to reproduce mechanically the Plaintiff's copyrighted musical compositions in suit.

6. The Defendants have not infringed the Plaintiff's copyrighted musical compositions.

7. The Plaintiff is estopped from now contending that the acts of the Defendants are not within the compulsory license provision of the Copyright Law [17 U.S.C. §§ 1(e), 101(e)].

8. The Plaintiff has unlawfully extended and attempted to extend the Plaintiff's copyright monopoly in the musical compositions in suit and the Plaintiff has combined with its licensing agent The Harry Fox Agency, Inc. and other music publishers licensing through the same agent The Harry Fox Agency, Inc. for the purpose of licensing the Plaintiff's musical compositions in suit in violation of the Anti-Trust Laws of the United States [Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2], and the Plaintiff has used its copyright monopoly in the musical compositions in suit in a manner constituting unclean hands and a misuse of the Plaintiff's copyrighted musical compositions in suit rendering the Plaintiff's copyrighted musical compositions unenforceable against the Defendants because, among other things:

a. The Plaintiff has agreed, combined and conspired with other music publishers via the common agent The Harry Fox Agency, Inc. in an attempt to deny the Defendants the rights provided via the compulsory license provision of the Copyright Law [17 U.S.C. §§ 1(e), 101(e)].

b. The Plaintiff has licensed various manufacturers to record the Plaintiff's musical compositions in suit at discriminatory license rates and with discriminatory license provisions in violation of the Anti-Trust Laws of the United States, including: Sections 1 and 2 of the Sherman Act [15 U.S.C. §§ 1, 2].

c. The Plaintiff has limited its licenses for the use of its copyrighted musical compositions in a manner attempting to expand the Plaintiff's statutory copyright monopoly to control the sale and distribution channels of the products manufactured via the Plaintiff's licensees, the title of the copyrighted works, and the maximum retail selling price of the products manufactured via the Plaintiff's licensees.

d. The Plaintiff has combined with others via the common agent The Harry Fox Agency, Inc. to provide a contingency fund for the financing and controlling of this lawsuit for the purpose of destroying the business of the Defendants to substantially lessen competition with the Plaintiff's licensees and to maintain and further expand the Plaintiff's copyright monopoly to control the manufacturers which may avail themselves of the compulsory license provision of the Copyright Law.

e. The Plaintiff has combined with its licensing agent The Harry Fox

Agency, Inc. in combination with the other music publishers pooling the control of the mechanical recording rights of the copyrighted musical compositions, including the musical compositions in suit, thereby substantially increasing and expanding the statutory copyright monopoly of the Plaintiff by virtue of the combination and not by virtue of the value or contribution represented by any one musical composition. The effect of this pooling is in contravention to the overriding federal policy of the Anti-Trust Laws of the United States and is in derogation of the policy underlying the Copyright Laws of the United States, particularly where the potential force of the pooled monopoly power is brought to bear upon one individual business in an effort to suffocate that business for the purpose of furthering the purposes and feeding the pooled monopoly power.

f.  The use of the combination of the Plaintiff and its agent The Harry Fox Agency, Inc. in combination with other music publishers, and the use of the resulting expansion of the Plaintiff's copyright monopoly, as a power for indiscriminately serving notices of infringements and demands of cease and desist upon individuals and companies without any substantial, good faith basis represents the Plaintiff's and its agent's, The Harry Fox Agency, Inc., use of the expansion of the copyright monopoly to force compliance with its desires and to further its purposes for maintaining and increasing the extension of the copyright monopoly is in contravention to the federal policies expressed via the Anti-Trust Laws of the United States.

The above conduct of the Plaintiff runs counter to the overriding federal policy expressed via the Anti-Trust Laws of the United States, including Sections 1 and 2 of the Sherman Act [15 U.S.C. §§ 1, 2], in many instances constituting conduct denounced as per se violations of the Anti-Trust Laws of the United States, including Sections 1 and 2 of the Sherman Act [15 U.S.C. §§ 1, 2], and the Plaintiff's conduct most definitely constitutes an abuse and a misuse of the Plaintiff's copyright monopoly rendering the Plaintiff's copyright monopoly in the musical compositions in suit unenforceable against the Defendants.

9. The Plaintiff's conduct and the conduct of the Plaintiff's agent The Harry Fox Agency, Inc. on behalf of the Plaintiff in refusing the mechanical royalties tendered by the Defendants, and the Plaintiff's conduct in using its copyright monopoly for the purpose of advancing unfounded accusations of copyright infringement and threats of infringement litigation, coupled with the total lack of any effort on the part of the Plaintiff to substantiate or affirm such threats and accusations constitutes an abuse of judicial process and a misuse of the Plaintiff's copyright monopoly rendering the Plaintiff's musical compositions in suit unenforceable as to the Defendants.

10. By virtue of the Plaintiff's conduct and the conduct of the Plaintiff's agent The Harry Fox Agency, Inc., and the Plaintiff's misuse of its copyright monopoly in the musical compositions in suit, the Plaintiff is estopped from receiving any mechanical royalty payments from the Defendants.

11. By virtue of the Plaintiff's conduct and the conduct of the Plaintiff's agent The Harry Fox Agency, Inc., the Defendants are entitled to recover all costs and disbursements incurred in this action, including a reasonable attorney fee pursuant to 17 U.S.C. § 116 of the Copyright Law.

EXHIBIT A

| Title | Authors | Registration Identification |
|---|---|---|
| God Bless The Child | Billie Holliday<br>Arthur Herzog, Jr. | Jul. 23, 1941<br>E pub. 96565<br>Jul. 30, 1968<br>R 440611 |
| Wonderful, Wonderful | Sherman Edwards<br>Ben Raleigh | Nov. 9, 1956<br>Eu 456070 |
| If You Go Away | Rod McKuen | Jun. 10, 1966<br>Ep 218782 |
| Malaguena (from Andalucia—Suite Espanola) | Ernesto Lecuona | Jan. 8, 1929<br>E For. 1839<br>Nov. 2, 1955<br>R 158475 |
| More (Theme from Mondo Cane) | N. Oliviero<br>R. Ortolani<br>Norman Newell | Sept. 3, 1963<br>Ep 178534<br>Mar. 24, 1969<br>Ef 33581 |
| The Peanut Vendor (El Manisero) | Moses Simon<br>Marion Sunsine<br>L. Wolfe Gilbert<br>Lawrence Kempton | Feb. 11, 1928<br>Exxc 683134<br>Mar. 21, 1955<br>R 146553<br>Aug. 21, 1930<br>E pub. 17364<br>Mar. 19, 1958<br>R 212811<br>Aug. 1, 1947<br>E pub. 15993<br>Dec. 11, 1959<br>R 247598 |
| Ballad of Ira Hayes | Peter La Farge | Mar. 21, 1962<br>Eu 712768 |
| Quireme Mucho | Gonzalo Roig<br>Jack Sherr | June 18, 1931<br>E pub. 23572<br>Sept. 30, 1958<br>R 221862<br>Oct. 14, 1937<br>E pub. 64699<br>Oct. 14, 1964<br>R 346365 |
| Theme from Mr. Broadway Jazz Impressions of New York | David Brubeck<br>Garson Kanin<br>Howard Brubeck | Groton Music Inc.<br>Mar. 1, 1965<br>Ep 197252 ·<br>(Rights under copyright assigned to Plaintiff, Nov. 20, 1961) |
| A Man, A Horse and A Gun (Un Uomo, Un Cavallo, Una Pistola) | Stelvio Ciprigni | Editioni Musicali C.A.M. S.p.a.<br>Eu 79197<br>Oct. 11, 1968<br>(Rights under copyright assigned to Plaintiff Mar., 1966) |
| There'll Be Some Changes Made | Billy Higgins<br>Benton Overstreet<br>Fletcher Henderson, Jr. | Sept. 16, 1921<br>Exxc. 519207<br>Sept. 20, 1948<br>R 38135 |