**UNITED TELEPHONE COMPANY OF MISSOURI, Appellee/Cross–Appellant,**

v.

**JOHNSON PUBLISHING COMPANY, INC., Appellant/Cross–Appellee.**

Nos. 87–2481, 87–2517.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1988.

Decided Aug. 31, 1988.

D.A.N. Chase, Overland Park, Kan., for appellant/cross-appellee.

Carter H. Kokjer, Kansas City, Mo., for appellee/cross-appellant.

Before WOLLMAN and BEAM, Circuit Judges, and RE,* Chief Judge.

RE, Chief Judge.

Plaintiff, United Telephone Company of Missouri (United Telephone), sued for damages and injunctive relief for the copyright infringement of its 1985 Jefferson City, Missouri telephone directory (Phone Book) by defendant, Johnson Publishing Company (Johnson), in its Jefferson City, Missouri, City Directory (City Directory). Johnson appeals from an order of the United States District Court for the Western District of Missouri, denying its motion for summary judgment, and granting plaintiff's motion for summary judgment. United Telephone cross-appeals from the district court's denial of its motion for reasonable attorneys' fees from Johnson.

The question presented on this appeal is whether the district court erred in holding that Johnson's use of the Phone Book, to obtain the names, addresses, and telephone numbers of new subscribers for United Telephone's telephone service, constitutes an infringement of United Telephone's copyright, regardless of Johnson's independent verification of the vast majority of this information.

Johnson contends that it did not infringe United Telephone's copyright in the 1985 Jefferson City Phone Book because: (1) it took no protected expression from United Telephone's Phone Book, or, alternatively, any protected material it did take was not of a sufficient quantity to constitute an infringement; (2) its use of United Telephone's Phone Book amounted to a "fair use" within the meaning of 17 U.S.C. § 107 (1982); and (3) United Telephone misused its copyright to create a monopoly in the names of its subscribers, and the misuse is

a defense to the charge of copyright infringement.

Since the district court committed no error in concluding that Johnson's 1986 City Directory was an infringement of United Telephone's copyright in its 1985 Phone Book, and that there is no valid defense to the infringement, we affirm the summary judgment in favor of United Telephone.

Pursuant to 17 U.S.C. § 505 (1982), United Telephone sought to obtain reasonable attorneys' fees from Johnson. Since the district court did not abuse its discretion, the order is affirmed.

## I. THE FACTS

United Telephone is a Missouri corporation which provides telephone service to Jefferson City, Missouri and its environs. As part of its service, and pursuant to regulations of the Missouri Public Service Commission, United Telephone annually publishes and distributes a Jefferson City area telephone directory. United Telephone's 1985 Phone Book, published in May 1985, includes a "white pages" section. The white pages consist of an alphabetical listing of the names of all telephone subscribers, except those customers desiring an unlisted number, together with the customer's address and phone number.

Johnson is a Colorado corporation in the business of publishing and selling "city directories" which include a white pages section. The white pages of the directories contain an alphabetical listing of area residents and businesses, with their addresses and telephone numbers. The city directory white pages also contain information about area residents and businesses which is not found in the white pages of United Telephone's phone books.

In June 1986, Johnson published two editions of its City Directory. A soft cover residential edition, which sold for $6, included a white pages section with the names, addresses, and telephone numbers of area residents, the names of their spouses, and the names and years of birth of

---

* The HONORABLE EDWARD D. RE, Chief Judge of the United States Court of International Trade, sitting by designation.

their children. The white pages business listings contained a brief description of the type of business and the names of the principals. A hard cover business edition of the 1986 directory, which sold for $120, contained a white pages section with the same information found in the residential edition white pages. The business edition white pages also noted the occupations of listed residents and their spouses, and whether they owned their home.

Johnson first published a city directory for Jefferson City in 1972, after purchasing a list of area telephone service subscribers from the Mullin Kille Company. Mullin Kille had compiled the list through door-to-door canvassing of area residents. Johnson published annual city directories, and, until 1980, it would update its list of telephone service subscribers with door-to-door canvassing. Beginning in 1982, Johnson updated its directories by referring to United Telephone's phone books.

In order to produce the white pages of its 1986 City Directory, Johnson compared its 1985 City Directory white pages, in alphabetical order, with the white pages of United Telephone's 1985 Phone Book. From this comparison Johnson obtained the names, addresses, and telephone numbers of residents and businesses not included in its 1985 directory. Johnson added these listings to its 1985 white pages to create a provisional computer data base for its 1986 City Directory white pages. The listings copied from United Telephone's 1985 Phone book totaled approximately 5,000 in number and represented approximately 20 percent of the total listings in the 1985 Phone Book.

In an effort to update all material and obtain other necessary information, Johnson employees attempted to contact all entries in its data base. Of those entries acquired by reference to United Telephone's 1985 Phone Book, Johnson was successful in contacting all but 214. For the 214 entries not contacted, Johnson copied the name, address, and telephone number printed in United Telephone's 1985 Phone Book, and reprinted this information in its 1986 City Directory.

The Johnson white pages contain separate listings for all area residents over 18 years old, including residents who are not subscribers for telephone service, or are subscribers with unlisted telephone numbers. The Phone Book contains listings only for its telephone service subscribers, and any non-area residents or businesses that request a listing. While both directories serve the Jefferson City area, the Phone Book covers several towns not included in Johnson's. The methods used to alphabetize the white pages of the two directories differed slightly.

United Telephone offered to sell Johnson a license to use its 1985 Phone Book white pages listings. After the May publication of its 1985 Phone Book, United Telephone raised the price for a license to use its 1985 white pages listings from 10 cents to 49 cents per entry. These offers were conditioned on Johnson's purchase of United Telephone's entire white pages listing, including those entries in communities outside the scope of Johnson's City Directory. Johnson declined the offers and did not purchase the license.

After Johnson's publication of its 1986 City Directory, United Telephone filed this suit against Johnson for copyright infringement. The parties entered into a stipulation of facts, and made cross-motions for summary judgment.

The district court held that Johnson's "activity constitutes direct evidence of substantial copying, thereby making United's claim for copyright infringement a valid one and which * * * warrants the granting of summary judgment." *United Tel. Co. v. Johnson Publishing Co.*, 671 F.Supp. 1514, 1522–23 (W.D.Mo.1987).

The district court denied Johnson's defense that its use of the 1985 Phone Book was a "fair use" within the meaning of 17 U.S.C. § 107 (1982). The court held that Johnson's attempt "to gain a profit from the publication and distribution of its directory * * * does not fall within § 107's meaning of 'fair use.'" *Id.* at 1523. The court dismissed Johnson's contention that United Telephone's alleged misuse of its copyright amounted to a defense to John-

son's infringement, by relying on the "line of cases which hold that antitrust defenses are inapplicable to copyright infringement cases." *Id.* at 1523 n. 3. Furthermore, the court, "in balancing the equities," held that United Telephone was not entitled to reasonable attorneys' fees. *See id.* at 1524. Johnson appeals from the decision granting United Telephone summary judgment on its copyright infringement claim, and United Telephone cross-appeals from the denial of its motion for reasonable attorneys' fees.

## II. STANDARD OF REVIEW

On appellate review of a decision to grant summary judgment, the court applies the same standard applied by the district court. *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224–25 (8th Cir.1983). Summary judgment is granted if "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Moreover, an appellate court may affirm a summary judgment "regardless of an incorrect analysis if the same result may be reached on theories other than those employed by the trial court * * *." *Kuehn v. Garcia*, 608 F.2d 1143, 1146 (8th Cir.1979), *cert. denied*, 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980). Since the facts have been stipulated, the question presented is whether United Telephone is entitled to judgment as a matter of law.

## III. DISCUSSION

### A. Infringement

The Constitution confers upon Congress the power "[t]o promote the Progress of Science and useful Arts by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. 1, § 8, cl. 8. This provision embodies the concept or judgment "that free expression is enriched by protecting the creations of authors from exploitation by others, and the Copyright Act is the congressional implementation of that judgment." *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard*

*Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979).

The Copyright Act seeks to protect "original works of authorship fixed in any tangible medium of expression," by granting to the author certain exclusive rights. *See* 17 U.S.C. § 102 (1982). These exclusive rights, set forth in 17 U.S.C. § 106 (1982), include the right to reproduce the copyrighted work, and the right to create derivative works from the copyrighted work. Copyright infringement is the violation of one of these exclusive rights of the copyright owner. 17 U.S.C. § 501(a) (1982). It has been stated that "[t]o establish a successful claim for copyright infringement, the plaintiff must prove (1) ownership of the copyright, and (2) 'copying' of protectible expression by the defendant." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987).

United Telephone has a certificate of copyright registration for its Phone Book. Hence, there is a presumption of validity of the copyright. 17 U.S.C. § 410(c) (1982). Furthermore, Johnson does not deny that United Telephone has a valid copyright in its 1985 Phone Book white pages. This court has held that telephone directories containing white pages are copyrightable. *See Hutchinson Tel. Co. v. Fronteer Directory Co.*, 770 F.2d 128, 131–32 (8th Cir. 1985).

■ United Telephone's white pages section is a "compilation," "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101 (1982); *see also Hutchinson Tel. Co.*, 770 F.2d at 132 (telephone directories are copyrightable as compilations). "A compilation * * * is copyrightable provided it is an original work of authorship and falls within one or more of the enumerated categories in Section 102." N. Boorstyn, *Copyright Law* 57 (1981). A literary work is an original work of authorship within 17 U.S.C. § 102, and directories fall within the definition of literary works. *See Hutchin-*

son *Tel. Co.*, 770 F.2d at 131 (quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 54, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5667).

The copyright in a compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b) (1982). Therefore, to prove copyright infringement, United Telephone must show that Johnson copied "material contributed by the author," i.e., protected expression, from the white pages of its 1985 Phone Book.

■ United Telephone's phone book service requires the annual publication of a Jefferson City Phone Book. Indeed, governing regulations state that telephone service companies must publish directories at regular intervals. *See* Mo.Code Regs. tit. 4, § 240–32.050 (1975). The annual publication of phone books is necessary to ensure that subscribers have the current listings for area residents and businesses. Approximately 20 percent of the listings in United Telephone's 1985 Phone Book white pages are either new listings, or listings with different information than the 1984 Phone Book.

By comparing its 1985 City Directory white pages with United Telephone's 1985 Phone Book white pages, Johnson discovered and obtained the names, addresses, and telephone numbers of new subscribers for telephone service. Johnson then copied this information into its City Directory computer data base. United Telephone's compilation or arrangement of annual phone books with new and updated listings is a protected expression of the preexisting names, addresses, and telephone numbers of its subscribers. By copying this information directly into its computer data base, Johnson has "taken" from United Telephone's compilation of its listings, and has copied "material contributed by the author." This copying by Johnson violates United Telephone's exclusive right to reproduce its 1985 Jefferson City Phone Book, and is an infringement of its copy-

right. *See, e.g., West Publishing Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219 (8th Cir.1986) (LEXIS star pagination feature was an appropriation of West's arrangement of legal decisions, and constituted copyright infringement), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *Rand McNally & Co. v. Fleet Management Sys.*, 634 F.Supp. 604 (N.D. Ill.1986) (appropriation of data from Rand–McNally's compilation of maps, by entering it into computer data base, constituted copyright infringement).

Johnson argues that, should the court find that it had copied protected expression from United Telephone, the copying was not of a sufficient quantity to constitute an infringement because United Telephone's 1985 Phone Book and Johnson's 1986 City Directory are not substantially similar. In support of its position, Johnson relies on *Universal Athletic Sales v. Salkeld*, 511 F.2d 904 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). In *Salkeld*, the owner of a copyright claimed that the defendant copied his exercise chart drawings. The court stated that "[t]o establish a copyright infringement, the holder must first prove that the defendant has copied the protected work and, second, that there is a substantial similarity between the two works." *Salkeld*, 511 F.2d at 907.

In this circuit, the substantial similarity requirement involves a two-part analysis. *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). In *Hartman*, the plaintiff, a free-lance artist, alleged that Hallmark had used her copyrighted graphics and script as the basis for its own products. The court held that to prevail "[t]here must be a substantial similarity 'not only of the general ideas but of the expressions of those ideas as well.' " *Id.* (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir.1977)). The requirement of substantial similarity of expression "is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120; *see also Salkeld*, 511 F.2d at 907.

Pointing to the different uses for Johnson's 1986 City Directory and United Telephone's 1985 Phone Book, Johnson argues that the two directories are not substantially similar. The stipulated facts, however, make it clear that the white pages sections of the two directories are substantially similar.

Both United Telephone's Phone Book white pages and Johnson's City Directory white pages are designed to provide readers with telephone numbers and addresses of local residents and businesses. Both are alphabetical lists of residents and businesses, with last names first, followed by first names, and addresses, with telephone numbers arranged in columns to the right of the listings. Except for certain areas covered in United Telephone's phone books, which are outside the scope of Johnson's city directories, an area resident who owns a city directory would find little reason to refer to the United Telephone Phone Book.

In this case, there is no doubt that both elements of the *Hartman* substantial similarity test are present. By taking the names, telephone numbers, and addresses of area residents, Johnson copied the "idea" of United Telephone's protected expression in its compilation or arrangement of the listings. Since an ordinary observer would conclude that, both as to the ideas and as to the expression of those ideas, Johnson's 1986 City Directory is substantially similar to United Telephone's 1985 Phone Book, the district court committed no error in rejecting Johnson's defense.

### B. Fair Use

Johnson's second contention is that its use of United Telephone's 1985 Phone Book was a "fair use" of the work pursuant to 17 U.S.C. § 107. Section 107, which provides that "the fair use of a copyrighted work * * * is not an infringement of copyright," is essentially a codification of the common law. *See* Comment, *The Stage of Publication as a "Fair Use" Factor: Harper & Row, Publishers, Inc. v. Nation Enterprises,* 58 St. John's L.Rev. 597, 605 (1984). The statute lists several factors that are to be considered "[i]n determining whether the use made of a work in any particular case is a fair use * * *." The enumerated factors are:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. An analysis of the four statutory factors reveals no error in the district court's determination that Johnson's use of the 1985 Phone Book was not a fair use.

The first factor is "the purpose and character of the use * * *." 17 U.S.C. § 107(1). Johnson used the copyrighted Phone Book to create a provisional data base for its 1986 City Directory. Johnson intended to, and did, earn a profit from its 1986 City Directory. "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of a copyright * * *." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984). Fair use is not favored when "the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 562, 105 S.Ct. 2218, 2231, 85 L.Ed. 2d 588 (1985).

The second factor in the fair use analysis is "the nature of the copyrighted work * * *." 17 U.S.C. § 107(2). Copyrighted fact works are accorded a wider scope of fair use than are creative works. *Harper & Row,* 471 U.S. at 563, 105 S.Ct. at 2232. This is the only factor which could possibly favor Johnson's position that its reference to United Telephone's white pages was a fair use.

The third statutory factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole

* * *." 17 U.S.C. § 107(3). Johnson took approximately 5000 listings from United Telephone's white pages. This amounted to nearly 20 percent of the entire white pages listings. Fair use analysis requires a qualitative as well as a quantitative view of the amount and substantiality of the material taken. *See West Publishing Co. v. Mead Data Cent., Inc.*, 616 F.Supp. 1571, 1580–81 (D.Minn.1985), *aff'd*, 799 F.2d 1219 (8th Cir.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). By taking the majority of all new listings in United Telephone's 1985 Phone Book, Johnson took an especially significant part of the United Telephone white pages. United Telephone would have no need to publish the 1985 Phone Book if there were no new or changed listings. Johnson, therefore, has copied from United Telephone what may be termed the "heart" of the 1985 Phone Book's white pages.

The final factor in a fair use analysis, "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), "is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566, 105 S.Ct. at 2233. "The fair use doctrine has always precluded a use that supersedes the use of the original." *West Publishing Co.*, 616 F.Supp. at 1581 (citing *Harper & Row*, 471 U.S. at 566–67, 105 S.Ct. at 2233–34). Although United Telephone does not offer its phone books for sale, it does have a market for a license to reproduce its customer list. In both 1985 and 1986, a competing directory company, Consolidated Directories, purchased licenses for United Telephone's white pages listings. In addition, prior to the publication of the 1986 City Directory, United Telephone offered to sell a license to Johnson. Permitting Johnson to use United Telephone's 1985 white pages in order to update its own data base would defeat United Telephone's market in licensing its customer list.

In agreement with the district court, we have concluded that Johnson's use of United Telephone's 1985 white pages was not a fair use. Johnson copied from United Telephone's white pages for profit. In order to increase the commercial value of its direc-

tory, Johnson appropriated the most important listings in the 1985 Phone Book white pages. Most significantly, the effect of Johnson's use would be to destroy United Telephone's market for its customer list. Hence, the court finds no error in the district court's denial of Johnson's fair use defense.

### C. Misuse

Johnson's final contention is that the district court erred in not holding that United Telephone's "misuse" of its copyright is a defense to its claim of copyright infringement. Specifically, Johnson asserts that, in 1986, when United Telephone sought a 500 percent price increase for a license to reproduce its white pages listings, and offered a license for its entire 1985 white pages listings, it "tied" the purchase of the new entries needed by Johnson to the purchase of its entire 1985 customer list. By this practice or offer, Johnson asserts that United Telephone attempted "to coerce prospective licensees to accept its unreasonable licensing policy." Hence, Johnson contends that the misuse defense in patent infringement litigation can be extended or applied to copyright infringement cases.

The patent misuse doctrine "is an extension of the equitable doctrine of 'unclean hands' to the patent field." *United States Gypsum Co. v. National Gypsum Co.*, 352 U.S. 457, 465, 77 S.Ct. 490, 495, 1 L.Ed.2d 465 (1957). Chief Judge Markey, of the United States Court of Appeals for the Federal Circuit, has stated that "[t]he doctrine of patent misuse is an affirmative defense to a suit for patent infringement, and requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed.Cir.) (citation omitted), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). Under the misuse doctrine, the holder of a patent may be barred from bringing an action for patent infringement if the patent is used in an effort to restrain competition. *See Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S.

488, 493–94, 62 S.Ct. 402, 405–06, 86 L.Ed. 363 (1942).

In *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), the Supreme Court affirmed an antitrust decree which enjoined the defendant motion picture producers from offering licenses for certain copyrighted movies only on the condition that the purchaser would also buy a license in certain other, less popular, copyrighted movies. *Id.* at 156–59, 68 S.Ct. at 928–30. Stating that the defendant's practice "add[s] to the monopoly of the copyright in violation of the principle of the patent cases involving tying clauses," the Supreme Court held that "a refusal to license one or more copyrights unless another copyright is accepted" is a violation of the antitrust laws. *Id.* at 158, 159, 68 S.Ct. at 929–30. A "tying" clause or "tying arrangement" has been described as an agreement "to sell one product but only on the condition that the buyer also purchases a different (or tied) product * * *." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

In *United States v. Loew's, Inc.*, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962), the Supreme Court stated that "[t]he principles underlying our *Paramount Pictures* decision have general application to tying arrangements involving copyrighted products * * *." *Id.* at 50, 83 S.Ct. at 104. In its brief, Johnson argues that the *Loew's* case "suggests that copyright misuse as a defense to a claim for infringement would be upheld in the proper circumstances in a manner similar to the patent misuse defense." *See* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.09[A] (1988).

Although the misuse defense has been raised in several cases, Johnson has cited no case in which the misuse of a copyright has been held to constitute a successful defense to copyright infringement. The court, however, has found several cases in which courts have noted that the misuse of a copyright, in violation of the antitrust laws, may bar a plaintiff from recovering damages for copyright infringement.

In *F.E.L. Publications, Ltd. v. Catholic Bishop*, 506 F.Supp. 1127 (N.D.Ill.1981), *rev'd*, 214 U.S.P.Q. 409 (7th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed. 2d 113 (1982), the plaintiff, a publisher of hymnals containing its copyrighted songs, sued the legal representative of the Roman Catholic diocese of Chicago for copyright infringement. The plaintiff alleged that various Chicago area parishes, which had refused to purchase its "annual copying license," persisted in infringing its copyrights by using its hymns. The district court denied plaintiff's claim, holding that the plaintiff's license, which required purchasers to pay for a license in plaintiff's entire collection of 1400 copyrighted songs regardless of how many songs are copied, was a "per se" violation of the Sherman Act. *F.E.L. Publications*, 506 F.Supp. at 1135–36. The court of appeals reversed, and held that the plaintiff's licensing agreement did not violate the Sherman Act. *F.E.L. Publications*, 214 U.S.P.Q. at 413–16. The court's analysis, however, recognized or acknowledged that misuse of a copyright, in violation of the antitrust laws, may be asserted as a defense in copyright infringement cases.

In *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.*, 357 F.Supp. 280 (W.D.Okl.1973), *rev'd*, 497 F.2d 285 (10th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975), the plaintiff, a music publisher, seeking damages and injunctive relief, sued the defendants for infringing some of its copyrighted musical compositions. In defense, among other things, the defendants alleged that plaintiff was guilty of "inequitable conduct, unclean hands and misuse of its musical compositions." *Edward B. Marks*, 357 F.Supp. at 281. The district court denied relief, holding that plaintiff had licensed its musical compositions "in violation of the Anti-Trust Laws," and that plaintiff's conduct constituted "an abuse and misuse of the [its] copyright monopoly rendering [its] copyright monopoly in the musical compositions in suit unenforceable against the Defendants." *Id.* at 287, 288. The court of appeals reversed, stating in part, "[a]ssuming *arguendo* that an antitrust violation is

a defense in a copyright infringement action, the record made in the trial court simply does not support its findings and conclusions." *Edward B. Marks,* 497 F.2d at 290; *see also Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors,* 786 F.2d 1400, 1408 (9th Cir.1986) (alleged conduct did not constitute misuse of copyright).

■ On the assumption that judicial authority teaches that the patent misuse doctrine may be applied or asserted as a defense to copyright infringement, the stipulated facts in this case do not support Johnson's contention that United Telephone "misused" its copyright. After the May publication of its 1985 Phone Book and before December 31, 1985, United Telephone offered Johnson a license in its white pages listings at 10 cents per entry. Since Johnson had the opportunity to purchase the white pages license at the lower price, it cannot now argue that the 500 percent price increase was an attempt to restrain competition. Indeed, it may be noted that another competing directory company, Consolidated Directories, purchased the license at 10 cents per listing in 1985 and at 49 cents per listing in 1986. Johnson made no effort to negotiate with United Telephone as to the price for the customer list. Hence, the price at which United Telephone offered to sell Johnson a license in its white pages listings does not in itself demonstrate an effort to restrain competition in area directories.

In addition, Johnson has not shown that an independent door-to-door canvassing of the Jefferson City area is not a viable alternative method of updating city directories. Johnson stated that it discontinued the door-to-door method of updating because it had difficulty finding workers willing to canvass the Jefferson City area, and because the increasing number of women in the labor force reduced the chances of contacting families during working hours. Suffice it to say that it has not been stipulated that door-to-door canvassing is no longer a feasible method of updating Johnson's city directories. Since the facts do not eliminate the possibility of an alternative method of updating Johnson's city directories, United Telephone's effort to require Johnson to purchase a license in its entire white pages listings is not a misuse that "add[s] to the monopoly of the copyright in violation of the principle of the patent cases involving tying clauses." *Paramount Pictures,* 334 U.S. at 158, 68 S.Ct. at 929; *see also Columbia Broadcasting Sys. v. American Soc'y of Composers, Authors, and Publishers,* 620 F.2d 930, 935–36 (2d Cir.1980) ("Trade is restrained, frequently in an unreasonable manner, when rights to use individual copyrights or patents may be obtained only by payment for a pool of such rights, but the opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is fully available.") (citations omitted), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1491, 67 L.Ed. 2d 621 (1981).

Since the stipulated facts do not show that United Telephone misused its copyright by restraining competition in Jefferson City directories, no error was committed by the district court in rejecting Johnson's defense that United Telephone misused its copyright.

### D. Attorneys' Fees

■ United Telephone cross-appeals from the district court's denial of its motion for reasonable attorneys' fees. In copyright infringement cases, Congress has granted the courts the authority to award "a reasonable attorney's fee to the prevailing party * * *." 17 U.S.C. § 505 (1982). The award of attorneys' fees, nevertheless, is committed to the sound discretion of the court, and the question on appeal is whether that discretion has been abused. *See Hartman,* 833 F.2d at 122. In this case, in weighing the equities of the parties, the district court determined that United Telephone was not entitled to an award of attorneys' fees. Since we find no abuse of discretion, the denial of attorneys' fees is affirmed.

### IV. CONCLUSION

It is the holding of the court that Johnson's copying from the white pages of

United Telephone's 1985 Phone Book into its data base for production of its 1986 City Directory white pages, and Johnson's reprinting of information from United Telephone's white pages into its City Directory white pages, were an infringement of United Telephone's copyright in its 1985 Phone Book. Accordingly, the decision of the district court, granting summary judgment in favor of United Telephone, and awarding it $15,764 in damages under 17 U.S.C. § 504(a)(1) (1982), and permanently enjoining Johnson from infringing on United Telephone's copyrighted directories, is affirmed.